BOLIN, Judge.
Plaintiff furnished winches, trucks, drivers, labor and materials to defendant’s agent E. L. Meley to raise the Buckhorn Sun, a sunken tugboat owned by Louis Greenspon, from the bottom of the Mississippi River. Charges for these services totaled $1937.38 which defendant refused to pay and plaintiff brought suit, obtained a non-resident attachment, and recovered judgment for the full amount, plus interest and costs. From that judgment defendant, a resident of St. Louis, Missouri, appeals.
Certain articles of defendant’s answer and reconventional demand set forth with such clarity his position that we quote them here:
“ * * * Further answering said paragraph 2, defendant avers that M. E. (sic) Meley was authorised, and instructed by defendant to secure a diver and the equipment necessary to raise a sunken barge belonging to defendant, which barge was located on the Mississippi River adjacent to defendant’s property in Madison Parish, Louisiana. That the said M. E. (sic) Meley was specifically instructed by defendant to secure quotations as to the costs to be incurred in connection with the raising of said barge, which costs were to be approved by defendant before the work was to be commenced. That Meley had no authority to contract with anyone without the written approval of the defendant herein. (Emphasis supplied.)
******
“7.
“That in connection with the raising of defendant’s barge commonly known as the 'Buckhorn Sun’, defendant did specifically authorize and 'empower the said M. E. (sic) Meley to enter into a contract with Coastal Diving Company, *655 and that prior to the consummation of this contract, it was duly approved by the defendant; that attached hereto and made a part hereof is a copy of said contract, identified herein as defendant’s Exhibit ‘A’.
******
“10.
“That since the raising of said barge as herein above set forth, it has been found by thorough inspection of same by the Greenville Manufacturing and Machine Works of Greenville, Mississippi, that extensive damage was done to the rudders, shoes, shafts, wheels and struts in ‘dragging’ said barge up the river bank; that this extensive damage was negligently caused by the plaintiffs herein and it has been estimated that the minimum cost for repair of said damages is the sum of $3,000.00. That defendant is, therefore, entitled to recover from S. L. Cummins and R. M. Horn, d/b/a Gulf Service, the amount of said damages.”
Since by the terms of his answer defendant admits the procuration of Meley for the purpose of securing “a diver and the equipment necessary to raise the barge” the question left for resolution is whether the agent’s actions in employing Gulf Service to salvage the boat, without first obtaining the principal’s approval in writing, went beyond the scope of Meley’s authority so as to relieve Greenspon of liability.
Basis for defendant’s charge that Meley exceeded his authority is the alleged practice of requiring a written contract for any work done for Greenspon. Mr. Crown, who had worked as comptroller for Green-spon for six years, testified “we have never done any job, whether it is putting a roof on a building or whether it is putting a tile floor on the floor without a contract.”
Meley testified he , was contacted by Greenspon and asked to locate the boat, procure a diver and attach cables to it and get it raised. He testified he performed all these services as a gesture of friendship and was never under a written contract with Greenspon nor was he advised to submit a written contract except for the diving operation. The reason given by Meley, and corroborated by Crown, for requiring the written contract for the diving operation was to avoid possible liability for injuries to the diver.
Meley supervised the entire salvage operation and reported to Crown by long-distance telephone almost daily, advising him of the hours worked and the cost; that they were having all kinds of trouble; that cables were breaking; that the winch trucks they were using were too small; and that they were contemplating the necessity of using a “cat.” Crown admitted he was not interested in what equipment was being used because he was under the impression a written contract was in effect. As soon as the tugboat was out of the water and “beached” Meley left the job in charge of an employee of defendant. Crown testified he later ordered the salvage operation to continue, and the tugboat was pulled up on the bank rather than being left “beached.” This latter procedure required three days and accounts for $563.25 of the total charges.
When asked by the court whether Meley had in fact made “progress reports” Crown acknowledged that he had, and when asked whether he had stopped Meley he answered, “He was not stopped.” He further said he was unaware of the total charges until September 15, when Meley personally took the bill to St. Louis. At that time he admitted discussing the bill with Meley but told him the “sum” was unauthorized.
Although the questions presented are almost wholly factual we do feel the following articles of LSA-Civil Code are controlling :
Article 2985:
“A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for *656 him and in his name, one or several affairs."
Article 2995 :
“It may vest an indefinite power to do whatever may appear conducive to the interest of the principal, or it may restrict the power given to the doing of what is specified in the procuration.”
Article 3021:
“The principal is bound to execute the engagements contracted by the attorney, conformably to the power confided to him.
“For anything further he is not bound, except in so far as he has expressly ratified it.”
Conceding that in other situations the defendant required a written contract for the performance of any work we have failed to find any evidence in this record that this agency was limited in any way, either in writing or orally. We are convinced Greenspon selected Meley as his agent for the purpose of locating and raising the tugboat. In raising this boat no written contract was mentioned nor understood except as to the diver. The expenses made the basis of this suit were incurred by Meley in this operation and defendant is clearly liable under LSA-Civil Code, Art. 3021 (supra).
The only evidence in the record relative to the reconventional demand of $3,000 as damages to the boat due to alleged faulty salvage procedure is the testimony of Joe Williams, vice-president of Greenville Manufacturing and Machine Works. In essence, he testified he could not say how much of the damage was caused by the method of recovering the boat, but rather testified positively the “rust pitting and deterioriation of the metal wasn’t done from the salvage operation, that was done over a period of years.” As to the damage to the wheels, shafts, rudders and struts he stated he had no way of knowing whether it was caused by the salvage operation or resulted from the sinking or other unrelated causes. We agree with the trial court that defendant has failed to prove his reconventional demand.
For the reasons stated the judgment appealed from is affirmed, costs to be paid by appellant.
Affirmed.