473 So.2d 394 (1985)
Melvin SMITH, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.
No. 84-637.
Court of Appeal of Louisiana, Third Circuit.
August 2, 1985.
E.M. Nichols, Lake Charles, for plaintiff-appellant.
Woodley, Barnett, Cox, Williams, Fenet & Palmer, Clayton Davis, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, DOUCET and KNOLL, JJ.
DOMENGEAUX, Judge.
This appeal arises from the dismissal of plaintiff's worker's compensation claim pursuant to a declinatory exception of lack of subject matter jurisdiction sustained by the trial court. In his written reasons for judgment, the trial judge aptly described the basis for his decision and included therein an excellent factual summary of the case. Although we do not quote his reasons verbatim, we incorporate them substantially in our factual summary below. For the reasons hereinafter explained, we affirm the lower court's ruling on the exception, but remand the case to give appellant the opportunity to amend his petition so as to remove the objection, if possible.
*395 Plaintiff-appellant Melvin Smith alleges that in February 1983 he sustained an accident and injury while working in Caddo Mills, Texas, for Metro Food Shops, Inc. (Metro). Although he was in Texas at the time of the alleged injury, Mr. Smith contends that he was working under a contract of employment made in Louisiana and he is asserting a claim for compensation benefits under the law of this state. Defendant Liberty Mutual Insurance Company, the compensation insurer of Metro, excepted to the petition on the ground that Mr. Smith is not entitled to compensation under Louisiana law because he was not hired in this state and was not working here when injured.
Since plaintiff-appellant was injured in Texas, he can recover under Louisiana law only if he establishes that the extraterritorial coverage of La.R.S. 23:1035.1 is applicable to his case. That statute provides that an employee can be entitled to the benefits of the Louisiana Worker's Compensation laws if the employee's employment is principally located in this state or if his contract of hire was made in Louisiana.
At all times relevant to this case, Metro owned and operated approximately twelve restaurants in the Dallas/Fort Worth metroplex. That area of Texas was the only area where Metro engaged in business. The company has had no business locations or operations in Louisiana and Mr. Smith never worked in this state.
In December 1982 plaintiff-appellant was residing in Lake Charles, Louisiana. He was an experienced restaurant worker and at one time he had worked for Metro in the Dallas/Fort Worth area. He went to Arlington, Texas, in early December 1982 to visit his son and to deliver some Christmas presents. Before returning to Louisiana he stopped at one of the Metro restaurants in Dallas and visited with Carlton Hatch, an acquaintance who was managing that establishment. Mr. Smith said that while there he left his telephone number with Mr. Hatch because Hatch told him Dennis Bryant, who was the general manager of Metro, wanted to get in touch with him.
Appellant returned to Louisiana, and shortly thereafter there was a long distance telephone conversation between him and Mr. Bryant. The evidence is conflicting as to who initiated the telephone call. Although the gentlemen agreed that employment was discussed during that conversation, they disagreed as to whether a contract of employment was formed at that time.
Mr. Bryant said that Mr. Smith called in December and asked if a position was available at the Arlington restaurant. He stated that he told Mr. Smith Metro was happy with the arrangement at Arlington, but that he would set up an appointment for appellant to talk with Metro's owner, James W. Adams. According to Mr. Bryant, Metro would not hire the manager of a restaurant until the prospective employee was interviewed face to face by Mr. Adams and approved by him. Mr. Bryant said that he spoke with Mr. Adams about the matter, and thereafter called Mr. Smith and requested him to come to Dallas for an interview. He said he indicated to Mr. Smith that Metro had a job available.
Mr. Smith went to Dallas and met with Mr. Adams, Mr. Bryant, and Wayne Adams, the son of James W. Adams. That meeting took place shortly before Christmas. When appellant went to the meeting he was aware that Mr. Adams directly involved himself in hiring and firing Metro personnel; that was one of the things that concerned Mr. Smith about the way Metro operated. Mr. Smith insisted that he had already been hired by Mr. Bryant before he met with Mr. Adams. However, when asked why he met with Mr. Adams for an interview he said it was to discuss his wages and where he would be working. Due to previous disc surgery on his neck, Mr. Smith's physical condition and ability to work were also discussed at the meeting. Mr. Smith felt he was able to do the work, but Mr. Adams required a release by Smith's doctor in Lake Charles before he could begin work.
At the interview Mr. Adams told Mr. Smith that he was satisfied with the operation *396 of the restaurant in Arlington, which is where Mr. Smith wanted to work, but he needed Mr. Smith at the Caddo Mills unit. Mr. Smith agreed to accept employment at Caddo Mills. However, it was a condition of his employment that he obtain a release for work from his doctor. Mr. Smith returned to Louisiana and on December 28, 1982, he obtained a release for light duty work from Doctor Gunderson. After notifying Mr. Bryant that the release had been obtained, Mr. Smith was told to report for work in January, 1983. Mr. Smith reported for work as requested and was placed in charge of the restaurant at Caddo Mills, where he remained until his alleged injury.
It is clear that Mr. Smith's employment with Metro was not principally located in this state. Thus, the only issue is whether the contract of employment between appellant and Metro was a Louisiana contract. If it was, then Mr. Smith is entitled to make a claim under the laws of this state. If it was not such a contract, he cannot recover under Louisiana law.
"In determining whether a contract should be regarded as a Louisiana contract or that of another state in workmen's compensation cases, the parties' intent should be paramount. Among the factors to be considered in determining that intent include the place for performance of the contract, the domicile of the parties, and the nature of the work to be done."
Milligan v. Glenburney Nursing Home, 408 So.2d 40 (La.App. 3rd Cir.1981) (Citations omitted). The factors applicable to this case do not indicate an intention of the parties to create a Louisiana contract. Metro operated solely in Texas and appellant was required to attend an interview in that state. Appellant's employment with Metro was exclusively in Texas and the accident for which he seeks compensation happened there. The fact that appellant was a Louisiana domiciliary when he accepted employment with Metro is not sufficient to establish a mutual intention of the parties to form a Louisiana contract of hire.
Since we cannot say the parties intended a Louisiana contract, we must consider whether the contract was actually formed in Louisiana. La.R.S. 23:1035.1. We conclude it was not. The long-distance call between Mr. Bryant and Mr. Smith, wherein the latter claims the contract was formed, was merely a preliminary conference. Metro required a personal interview with prospective employees; appellant's interview occurred in Dallas where issues as important as wages and place of employment were discussed and settled. It is our opinion that a firm offer of employment was made at this Dallas interview, conditioned on appellant's ability to procure a work release from his doctor. We further agree with the trial judge that Metro's offer was accepted in Dallas when appellant agreed to take a position in Caddo Mills at a fixed and determined salary. Appellant returned to Louisiana to obtain the doctor's release, thereby fulfilling the suspensive condition to the contract of hire. As the offer of employment was made and accepted in Texas, the resulting contract is subject to the laws of that state and not those of Louisiana. (See Boothe v. Universal Tank & Iron Works, Inc., 360 So.2d 1371 (La.App. 3rd Cir.1978), for a case closely analogous to the one before us.)
Appellant has cited us to the cases of Stapleton v. Travelers Insurance Company, 359 So.2d 1051 (La.App. 3rd Cir.1978), writ denied, 360 So.2d 1176 (La.1978), and Wilson v. Gulf Insurance Company, 431 So.2d 1095 (La.App. 3rd Cir.1983) as support for his assertion that the contract of hire was made in Louisiana. Neither case can be applied to the facts before this Court. In Stapleton, all work-related factors, except the employee's actual work site, were centered in Louisiana. The Stapleton court found that the parties intended to create a Louisiana contract; such an intention was not determined in the present case. The Wilson court held that the intermediate person who induced the employee to go to Texas to work, was clothed with apparent authority to hire. Since the agreement made pursuant to the apparent *397 authority occurred in Louisiana, the employee's contract was confected in Louisiana and those laws apply to the subsequent worker's compensation claim. However, in the case before us, Mr. Smith was well aware that Mr. Bryant had no authority to hire him over the phone. Appellant knew that Mr. Adams made the ultimate employment decisions in the organization, a fact which had caused Mr. Smith some concern. Neither of the above cited cases offer relevant support for appellant's contentions.
The trial judge's ruling, sustaining the declinatory exception of lack of subject matter jurisdiction is affirmed. However, it does not necessarily follow that appellant's suit should be dismissed.
"[T]he judgment sustaining the exception to jurisdiction should allow plaintiff leave to amend his petition so as to remove the objection, if possible. Only if the grounds for the objection cannot be removed or, if the plaintiff fails to comply with an order requiring such removal within the delay allowed by the court, will the suit be dismissed. La. Code of Civil Procedure Articles 932 and 933. Accordingly, we will remand this case to the trial court for the purpose of allowing plaintiff to amend his petition and, if such amendment is effected, for further proceedings. As was specified in Forman [v. Deaton, Inc., 347 So.2d 911 (La. App.3d Cir.1977)], the petition should be amended in order to seek recovery under the compensation laws of the appropriate state."
Boothe v. Universal Tank & Iron Works, Inc., supra. (Citations omitted.) Therefore, pursuant to the rationale of Boothe, we remand the case to give plaintiff-appellant the opportunity to attempt to state a cause of action under the substantive worker's compensation law of Texas.
For the above and foregoing reasons, the judgment of the district court sustaining the exception of lack of subject matter jurisdiction is affirmed; the judgment of the district court dismissing plaintiff-appellant's suit is reversed, and the case is remanded for further proceedings not inconsistent with the views expressed herein. Costs of this appeal are to be borne by appellee. Costs of trial to await the ultimate outcome of the litigation.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.