HAMITER, Justice.
Quintín J. Mattel, an ironworker, instituted this suit to recover benefits- under the Louisiana Workmen’s Compensation Statute for injuries sustained by him in an accident which occurred while he was working on a construction job in Gulfport, Mississippi. He resides in Orleans Parish and holds membership in the Ironworkers’ Union, Local No. 58, of New Orleans.
Plaintiff’s employer, Pittman Construction Company, Inc. (hereinafter referred *543 to as Pittman), and its insurer, the Fidelity and Casualty Company of New York, are the defendants.
Pittman is a Delaware corporation authorized to do business in Louisiana, Alabama and Mississippi. Its main office is in New Orleans, but it also maintains offices in Baton Rouge and Gulfport, Mississippi.
The trial judge sustained an exception to the court’s jurisdiction ratione materiae and dismissed the suit. The judgment was affirmed by the Court of Appeal, Fourth Circuit. 174 So.2d 141.
The case is now before this court on a writ of certiorari issued on the application of plaintiff. 247 La. 1040, 175 So.2d 648.
The Court of Appeal correctly stated: “ * * * It is well settled that where the contract of hiring is made in Louisiana but the injury occurs elsewhere, this state has a legitimate interest and may entertain jurisdiction over the subject matter and apply its compensation statute. * * * ” See Ohlhausen v. Sternberg Dredging Company et al., 218 La. 677, 50 So.2d 803. Therefore, we must determine whether this plaintiff’s contract of hiring was made in Louisiana or Mississippi.
The record reflects that whenever the construction project of Pittman in Gulf-port needed skilled ironworkers its representative would contact the New Orleans Local (which has jurisdiction over the Gulf-port area) and the latter, in turn, would send the required workers to the site.
Pittman could reject any particular person sent to the job, but it was required to use a union man or face the possibility of a strike. Further, Pittman was not a party to the Master Agreement existing between the Associated General Contractors and the A.F.L.-C.I.O; however, the understanding was that it would pay union scale wages and mileage in accordance with that contract.
The testimony adduced herein further discloses that plaintiff’s employment came about in the following manner: shortly prior to June 17, 1963 a Mr. Hunt, the business agent for Local No. 58 of New Orleans, Ironworkers’ Union, “got an order” from Pittman for two men to be sent to the Gulfport site (it is not shown where the request was received by Hunt). The order was referred in New Orleans to Edward Grandin, financial secretary and treasurer of such local, whose duties included the filling of orders for ironworkers.
On the morning of June 17, 1963 plaintiff reported to the union hall in New Orleans. There he was told by Grandin that a job was available for him in Gulfport with Pittman. Whereupon, he immediately accepted the employment, being then aware of the terms thereof with respect to wages, time, etc. Shortly thereafter, he and another ironworker left New Orleans and traveled to the site in Gulfport. On arrival he *545 reported to the job foreman who put him to work “bolting up the iron”. Later, on the same day, the accident which gave rise to plaintiff’s injury occurred.
 As a general rule, in bargaining or in other dealings with employers, a union represents only its members. However, when it and an employer enter into an arrangement such as is evidenced here the union becomes the agent of the employer (for employment purposes) and is authorized to make a job offer for the latter. Accordingly, the acceptance of the offer by a prospective employee completes the contract of hiring.
We do not agree with the defendants’ contention that, because Pittman had the right to reject any person sent to it by the union, the offer made by the New Orleans Local to the plaintiff constituted merely a proposal for him to apply in Gulfport for a job; that plaintiff applied in Gulfport and there he was accepted by the foreman; and that, therefore, the contract is not one over which Louisiana courts have jurisdiction.
• To begin with the plaintiff was not rejected; he was immediately put to work at the Gulfport job for which his services had been solicited in New Orleans. Moreover, the record is barren of any evidence that it was contemplated that plaintiff was going to Gulfport merely to apply for work; Furthermore, there is no proof of any kind that plaintiff made an application for employment. To the contrary it was shown that he did not go to Pittman’s office, did not fill out a written application form, and did not make any oral request for employment. In fact, it does not even appear that the foreman had the authority to reject any employee sént as a result of Pittman’s order for ironworkers (in this connection we think that Pittman’s failure to call its foreman to testify — or to explain the reason for such failure — weakens its contention immeasurably). Also noted is the absence of any suggestion that Pittman had ever rejected a union employee sent to a construction site at its request.
In our. opinion (based on the evidence adduced) it was contemplated that when the men “ordered” by Pittman were offered jobs on the Gulfport project by the union representative in New Orleans, and they agreed to go to the site, such workers were then hired and would be put to work under that contract of hiring. Therefore, since both the job offer to this plaintiff and its acceptance took place in Louisiana the contract is one in which this state has an interest and its courts have jurisdiction to apply the Louisiana compensation statute.
The cases of Cobb v. International Paper Company et al., 76 So.2d 460 and Woodham v. Travelers Insurance Company et al., La. App., 161 So.2d 368, relied on by the defendants, are not controlling here. They are easily distinguishable on the facts and circumstances surrounding the employment.
*547 In the Cobb case the opinion reflects that the employee went to the job site in Mississippi, where he made formal application for employment (in the employer’s personnel office there), he producing his social security card and giving the history of his personal status, etc. Actually, his work began on a day later than the one on which he reported and made the application.
In the Woodham case the court found that the employee “heard” that a project in Mississippi, on which he wanted to work, was ready to start. Whereupon he quit his Louisiana job, on which he was then working, and went to Mississippi in the hope of obtaining employment there; that he applied to the defendant’s foreman on that project who was authorized to hire the needed employees; and that no one sent or transferred him to the job in Mississippi.
For the reasons assigned the judgment of the Court of Appeal is reversed arid set aside, the defendants’ exception to the court’s jurisdiction ratione materiae is overruled, and the case is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. Costs of the Court of Appeal and of this court in the present proceedings are assessed to the defendants. The assessment of other costs is to await the final determination of the litigation.