431 So.2d 1095 (1983)
Leonard J. WILSON, Plaintiff-Appellant,
v.
GULF INSURANCE COMPANY, et al., Defendant-Appellee.
No. 82-722.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1983.
*1096 Broussard, Bolton & Halcomb, Dorwan G. Vizzier, Alexandria, for plaintiff-appellant.
Gold, Little, Simon, Weems & Bruser, John F. Simon, Alexandria, for defendant-appellee.
Before FORET, CUTRER and DOUCET, JJ.
DOUCET, Judge.
In this worker's compensation-conflicts of law case the plaintiff, Leonard J. Wilson, alleges an employee of defendant, Continental Drilling Co., as agent for the defendant, had authority to hire and in fact hired him in Louisiana. Thereafter, he was injured in Arkansas while in the employ of defendant. An exception to subject matter jurisdiction was filed by defendants, claiming the contract of employment was not one executed in Louisiana within the purview of La.R.S. 23:1035.1 such as to give extraterritorial effect to our workmen's compensation laws. The trial court sustained the exception. The injured worker appeals. We reverse.
Plaintiff alleges he was injured while working on a drilling rig in Arkansas, at which time he was an employee of Continental Drilling Company (sometimes hereinafter called "Continental"), an Oklahoma corporation. The plaintiff alleges in his petition that at the time of the accident, he was working under a contract of hire made in the State of Louisiana. The defendants filed an exception to the subject matter jurisdiction of the court, claiming that at the time of the alleged accident, the plaintiff was working for Continental Drilling Company under a contract of hire made in the State of Texas.
In June of 1981, Leslie Smith was interviewed in Tyler, Texas, by Clay Pittman, the operations manager for the East Texas Division of Continental Drilling Company. At that time, Pittman told Leslie Smith that Smith would be employed by Continental as a driller on a drilling rig which was in the process of being manufactured. Smith was to be called when the rig was completed and told when to report to Tyler to begin working for Continental.
At the interview, Leslie Smith asked Clay Pittman if he could hire a crew, and Clay Pittman told Smith that Continental cleared all people in the Owentown District Office. (Owentown is a suburb of Tyler) According to defendant, Mr. Pittman told Smith that when Smith came back to Tyler to go to work, if he would bring some hands with him, that Pittman would consider them for employment. Pittman testified that he told Smith if he would bring hands with him "we would look at them and that I was sure that we could use them that there was jobs available for them." Mr. Pittman also informed Smith that he could not hire any of his relatives.
Upon returning to Louisiana, Leslie Smith contacted Ray Phelps, A.W. Smith and plaintiff Leonard Wilson. He offered them jobs as his crew for Continental. They accepted. At trial, Leslie Smith testified he understood he could hire although he acknowledged his crew would have to appear in Tyler, Texas for final acceptance. Leslie Smith was contacted later by Clay Pittman by telephone and told to report in Tyler on July 13, 1981. Leslie Smith gave Pittman the names of the crew he was bringing. On July 13, Leslie Smith and his crew went to Tyler and began the employment with Continental.
When Leslie Smith and his crew reported, they were met outside the office by Clay Pittman. Before they filled out any application or had any interviews they were *1097 issued hard hats, stickers and gloves and sent to the yard with a tool pusher to inspect the rig on which they would be working. Hotel accommodations had already been arranged for them by Continental when they arrived. After checking into the Ramada Inn, the Leslie Smith crew and three other crews filled out applications and then attended a school at the Ramada Inn for the remainder of the week. Applications were handed out after 8:00 A.M. on July 13, 1981. The application stated, "To be placed on payroll, all job applicants must first fill out this form completely." These were handed out to four or more crews of approximately 26 people sitting in the same room. They were filled out, taken up and examined before 9:30 A.M. Although the application calls for a personal interview, none were performed. At 9:30 A.M. the employees were congratulated by a vice-president for having accepted Continental employment.
The trial court sustained the exception and dismissed the plaintiff's action, holding that Leonard Wilson knew, when he left Jena to go to Tyler, Texas, that Continental Drilling Company had not accepted him as an employee and that whether he would be hired or not rested with the management of the corporation.
From that judgment, plaintiff took a devolutive appeal assigning the following specification of error: "The trial court committed manifest error when it determined Leonard Wilson's contract of employment was not `made in Louisiana' as required by Louisiana Revised Statute 23:1035.1."
Factors favoring Texas as the proper forum, as noted by defendant, are as follows: Plaintiff has never worked in Louisiana under Continental; the accident occurred in Arkansas; Continental, an Oklahoma corporation, is not qualified to do business and did no business here in July of 1981 when plaintiff was hired; and the interview and application completion in Tyler, Texas indicates Smith was not the agent of Continental and, even if so, Smith lacked the authority to hire. On the other hand, appellant asserts he was hired in Louisiana, thereby enabling him to invoke La.R.S. 23:1035.1.
Both Texas and Arkansas have a significant relationship with the company's operations, vis-a-vis the plaintiff, however, Louisiana has an interest in protecting its injured workers. A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. Restatement (Second) of Conflicts of Law § 6(1) (1971). La.R.S. 23:1035.1(1) provides:
§ 1035.1 Extraterritorial coverage
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
The sole issue on appeal is whether a contract of hire was made in this state. Resolution of that question hinges on whether Leslie Smith had authority, actual or implied, to hire plaintiff. We note that the parties did not specify the law which was to control in any contract.
In Ohlhausen v. Sternberg Dredging Co., 218 La. 677, 50 So.2d 803 (1951) the plaintiff wrote to his former employer from Louisiana and asked to have his old job back whereupon the employer, a Delaware corporation, responded that if Ohlhausen were to come to Florida, he would be reinstated. The plaintiff was subsequently injured in Arkansas while working for Sternburg Dredging Co. and successfully sued for compensation benefits in the trial court. The Court of Appeals reversed, finding that the contract was not executed in Louisiana and dismissed plaintiff's suit. 42 So.2d 371 (Orl. App.1949). The Louisiana Supreme Court held that the plaintiff accepted the employer's counter-offer by traveling to Florida *1098 and the contract of employment was entered into in Louisiana. Accordingly, a Louisiana court could give its compensation statute extraterritorial effect to cover injuries received in another state. See also: Stapleton v. Travelers Ins. Co., 359 So.2d 1051 (La.App. 3rd Cir.1978), writ denied 360 So.2d 1176; and Welch v. Travelers Ins. Co., 225 So.2d 623 (La.App. 1st Cir.1969), writ denied 254 La. 852, 227 So.2d 594.
In Mattel v. Pittman Construction Co., 248 La. 540, 180 So.2d 696 (1965), the plaintiff, a Louisiana resident, reported to a union hall in New Orleans where he was informed by a union official that a job was available for him in Gulfport, Mississippi with Pittman Construction Co., a Delaware corporation. Like the plaintiff in the present case, Mattel promptly accepted the employment, then aware of terms with respect to wages, etc., and departed with another ironworker to the site in Gulfport. Upon arrival the plaintiff was immediately put to work. Thereafter, the worker was injured. His subsequent suit for benefits was dismissed for lack of jurisdiction. Although Pittman was not party to any written agreement with the alleged agent and they could reject any particular person sent to the job, as here, it was customary that persons selected by the union would be hired. Under such circumstances, the Louisiana Supreme Court found that the union was the agent of the employer and acceptance of the union's offer by the employee completed the contract of hire.
The defendant's actions were such as to clothe Smith with apparent power to hire plaintiff, who acted in good faith and with reasonable prudence. Plaintiff had no reason to believe there were limitations on Smith's authority to hire on behalf of Continental Drilling Company. Certainly appellant could not be charged with knowledge of the employer's internal personnel procedures when Smith's testimony indicates his understanding of same was, at best, confused. Although plaintiff completed his employment application after arrival in Texas, it appears clear that such collection of data was a mere formality necessary for payroll, insurance, tax and other purposes. At that time, plaintiff's contract of hire was already complete and his work had already begun with receipt of a hard hat and inspection of the rig. Approximately 26 persons were recruited and not one of those in attendance was rejected. Notably absent from the record is any substantial evidence that Continental ever rejected a person under said circumstances. Before departing from Louisiana, the crew solicited by Smith was informed of their wage and job description, and Smith communicated to Clay Pittman the identities of the workers he was bringing to Texas. As this court stated in Ebert v. Babin, 200 So.2d 672 (La.App. 3rd Cir.1967):
Where the principal clothes an agent with apparent authority to perform certain acts, and a third person who has no knowledge of or reason to believe that there are limitations on that authority deals with the agent, then the principal is estopped from setting aside the acts of the agent which are within his apparent authority, although beyond the actual power delegated to him. See LSA-C.C. art. 3000; Goldman v. Greater Louisiana Corporation, 126 So.2d 771 (La.App. 4th Cir.1961); James v. Judice, 140 So.2d 169 (La.App. 3d Cir.1962); International Union of Operating Engineers, Hoisting & Portable Local 406 v. Guy Scroggins, Inc., 168 So.2d 724 (La.App. 3d Cir.1964, Writ Refused); Fidelity Credit Company v. Bradford, 177 So.2d 635 (La.App. 3d Cir. 1965); Morton v. American Employers Insurance Company, 104 So.2d 189 (La. App. 2d Cir.1958); General Finance Company of Louisiana v. Veith, 177 So. 71 (La.App.Orl.Cir.1937).
See also: Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La.App. 1st Cir.1972); Gulf Service v. Greenspon, 152 So.2d 654 (La.App. 2nd Cir.1963). "Likewise, an employer who has placed his work in the hands of another and has vested him with apparent general authority to hire helpers, cannot assert secret limitations on the authority granted". Section 56, Chapter 3 of Malone's Louisiana Workman's *1099 Compensation Law and Practice. Neither party has contended that a different result would be reached by application of Texas law relative to agency.
The case of Milligan v. Glenurney Nursing Home, 408 So.2d 40 (La.App. 3rd Cir. 1981), relied on by the defendants, is not controlling here and is easily distinguishable on the facts and circumstances surrounding the initiation of employment, particularly the element of mandate.
For reasons assigned hereinabove, the judgment of the trial court is reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.