509 So.2d 593 (1987)
Edward Albert CHANCE, Plaintiff-Appellee,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, et al., Defendants-Appellants.
No. 86-281.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1987.
*595 Bolen and Erwin, Alexandria, for defendants-appellants.
Ralph W. Kennedy, Alexandria, for plaintiff-appellee.
Before DOUCET, YELVERTON and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not the trial court was correct in overruling exceptions of subject matter jurisdiction and prescription and in awarding plaintiff permanent total disability benefits and penalties and attorney's fees against plaintiff's employer and its worker's compensation insurer, in solido.
Edward Albert Chance (hereinafter referred to as plaintiff) was injured during sandblasting operations alongside a drilling rig at a shipyard in Orange, Texas on September 8, 1979. As a result of the accident plaintiff was paid weekly benefits under the Longshore and Harbor Worker's Compensation Act from September 9, 1979 until December 14, 1984, and some medical expenses. On February 18, 1983, plaintiff filed suit in Rapides Parish, Louisiana against International Moorings and Marine, Inc., plaintiff's former employer, and its worker's compensation insurer, The Fidelity & Casualty Company of New York (hereinafter referred to collectively as defendants), to recover benefits under Louisiana's worker's compensation laws which were allegedly due as a result of the September 8, 1979 accident. Defendants filed a declinatory exception of subject matter jurisdiction and a peremptory exception of prescription, which were denied by the trial court. After a trial on the merits, the trial judge awarded plaintiff judgment against defendants, in solido, for permanent total disability benefits, subject to a credit for payments previously made, plus penalties and attorney's fees. Defendants filed a motion for a new trial which was denied by the trial judge. Defendants now appeal the judgment of the trial court denying their exceptions of subject matter jurisdiction and prescription and awarding plaintiff permanent total disability benefits and penalties and attorney's fees. We affirm the trial court's denial of defendants' exception of subject matter jurisdiction and prescription and affirm in part and amend in part the judgment of the trial court against defendants, in solido, awarding plaintiff permanent total disability benefits and penalties and attorney's fees.

FACTS
In September, 1979 the plaintiff was contacted at his home in Pineville, Louisiana by W.L. Adams of Pineville, Louisiana, a friend of plaintiff, concerning a sandblasting and painting crew to be organized by Adams for work on a drilling rig at an Orange, Texas shipyard. The employment agreement was that the plaintiff was to be paid $5.50 per hour for an expected twelve hours per day, plus room and board for the work on the Texas job and for other employment with defendant in the future. When arriving in Orange, Texas with the rest of the sandblasting and painting crew from Louisiana, plaintiff was met by Mr. Austin Ray Snow, an employee of International Moorings and Marine, Inc., a Louisiana corporation based in New Iberia, Louisiana. Mr. Snow was to supervise the sandblasting and painting operations to be done by International Moorings and Marine, Inc. at the Orange, Texas shipyard. After signing the necessary paperwork, plaintiff began working.
*596 During plaintiff's fifth day of work, on September 8, 1979, plaintiff was loading a sand hopper, a machine used in sandblasting the drilling rig, which was set up on the dock alongside the drilling rig. A crane operator had positioned a funnel, which was attached to a cable from the crane and which contained a load of gravel, over the sand hopper in order to load the hopper. The plaintiff, whose job was to stand on a deck on top of the sand hopper and open a gate on the funnel in order for the gravel to drain into the sand hopper, had opened the gate on the funnel and was watching the gravel drain into the sand hopper when the funnel and its load dropped 12 to 16 inches. After the load dropped, the steel cable attaching the funnel to the crane tightened, and the funnel bounced under the weight of the load, knocking the plaintiff off the sand hopper. As the plaintiff was falling a distance of some 10 to 12 feet to the level of the dock, his left ring finger caught on some machinery causing his finger to be severed almost completely. Plaintiff hit the dock, landing on his right hip, bounced off the edge of the dock and fell into the water. Plaintiff was dragged from the water and taken to a hospital where he stayed for four days and where his finger was reattached.
Plaintiff complains of almost constant and sometimes severe pain since the accident. He reported lower back, right hip, and right leg pains to Dr. Brodsky, an orthopaedic surgeon at his first office visit on April 4, 1980. X-rays and a myelogram were taken, which revealed a congenital developmental spondylolysis at the L4-5 level, a small disc protrusion at the L4-5 level and a posterior compression. Plaintiff was initially treated conservatively for his back problems until April 17, 1980 when a laminectomy and fusion operation was performed. Plaintiff last saw Dr. Brodsky in February, 1982, at which time, in the doctor's opinion, no future surgery was indicated.
Plaintiff also saw several other physicians. He was seen in the emergency room of the hospital on the day of the accident by an associate of Dr. Brodsky. He was also treated by Dr. Cedric Lowrey, an orthopaedic surgeon from Alexandria, Louisiana, from October, 1979 to April, 1980, primarily for complications in plaintiff's finger. Dr. T.E. Banks, another orthopaedic surgeon from Alexandria, treated plaintiff from January, 1984 until February 2, 1985 concerning plaintiff's complaints of lower back and right leg pains. He felt that plaintiff's complaints of pain were as a result of "scarring following the injury and the surgery." Plaintiff was also in custody of the Louisiana Department of Corrections from May 1, 1984 until December 21, 1984 for a criminal offense, during which time he testified he was prescribed pain medication due to pain in his lower back.
Plaintiff attended vocational school from June, 1980 until approximately 1983 and was trained as an electronics technician. He later became a licensed TV technician and has worked in such capacity repairing TVs and small appliances for various electronics businesses. At the time of trial on the merits in this matter, on May 23, 1985, plaintiff was employed as a TV technician at $7.00 per hour. Plaintiff was absent from work approximately 1 ½ days per week due to working in substantial pain.
The accident on September 8, 1979, which gave rise to the subject of this litigation, was reported to the defendants' worker's compensation insurance adjuster, Underwriters Adjusting Company, on September 17, 1979. Disability payments were made under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901, et seq., out of the adjuster's Beaumont, Texas office. Plaintiff was paid weekly benefits totalling $41,887.17 for the 275 week period from September 9, 1980 until December 14, 1984. In addition, medical bills for "reasonable and necessary medical benefits" were paid. Defendants' claim adjuster did, however, refuse to pay for travel expenses and hotel accommodations incurred during plaintiff's trips to Dr. Brodsky's Houston, Texas office from plaintiff's home in Pineville, Louisiana.
Plaintiff filed suit on February 18, 1983 in District Court in Rapides Parish, Louisiana for benefits under Louisiana's worker's compensation laws as a result of the September *597 8, 1979 accident. Named as defendants were International Moorings and Marine, Inc., plaintiff's employer at the time of the accident, and its worker's compensation insurer, Fidelity & Casualty Company of New York. Plaintiff sought permanent total disability benefits, costs of medical treatment and travel expenses which were refused, future medical expenses, and penalties and attorney's fees as a result of defendants' arbitrariness, capriciousness and unreasonableness in the refusal of defendants to pay medical and travel expenses and refusing to authorize local medical treatment.
Defendants filed an exception of lack of subject matter jurisdiction and of prescription. The basis of defendants' exception to subject matter jurisdiction was that the injury occurred in Texas and that, under the provisions of LSA-R.S. 23:1035.1, since the plaintiff did not work principally in Louisiana and the contract of employment was not one "made in Louisiana," the court lacked subject matter jurisdiction. The trial judge overruled the exception, finding that the accident did occur outside Louisiana, but that the contract of employment was a Louisiana contract. The basis of defendants' exception of prescription was that the accident occurred in 1979, and this suit was not filed until 1983, and that, under the provisions of LSA-R.S. 23:1209, payments under the Longshore and Harbor Workers' Compensation Act (referred to as LSHWCA), did not interrupt prescription of plaintiff's claim for compensation under Louisiana's worker's compensation laws. The trial judge overruled this exception finding that the payments made under LSHWCA acted to interrupt prescription on plaintiff's Louisiana cause of action.
A trial on the merits commenced on May 12, 1985, and the note of evidence was held open until July 17, 1985, upon agreement of the parties and the court, for the taking of additional evidence. A decision was rendered in the matter, resulting in a final judgment signed December 5, 1985, awarding plaintiff permanent total disability benefits under Louisiana's worker's compensation laws, LSA-R.S. 23:1021, et seq., subject to a credit for payments previously made under LSHWCA, plus statutory penalties and attorney's fees in the amount of $3,000.00 for defendants' arbitrary refusal to pay compensation benefits under the Louisiana Act for plaintiff's employment related injuries. In response to the judgment, defendants filed a motion for new trial based on their contention that plaintiff's award for permanent total disability and plaintiff's award for penalties and attorney's fees were contrary to the law and the evidence. This motion was denied by the trial judge. Defendants now appeal the trial court's denial of their exception of subject matter jurisdiction and prescription and the trial court's judgment on the merits, assigning four assignments of error which are that:
(1) The trial court erred in finding that a Louisiana court may exercise subject matter jurisdiction over plaintiff-appellee's claim for worker's compensation benefits and thereby give extraterritorial affect to the Louisiana Worker's Compensation Act;
(2) The trial court erred in finding that plaintiff-appellee's claim for worker's compensation benefits had not prescribed at the time suit was filed;
(3) The trial court erred in finding that plaintiff-appellee is entitled to benefits under the Louisiana Worker's Compensation Act for permanent total disability; and
(4) The trial court erred in rendering judgment against defendants-appellants, International Moorings and Marine, Inc. and the Fidelity and Casualty Company of New York, in solido, for penalties and attorney's fees pursuant to LSA-R.S. 23:1201.2.

TIMELINESS OF SUSPENSIVE APPEAL
Before commencing a discussion of defendants' assignments of error, we note that defendants filed a motion for new trial which was denied, but the record does not indicate that defendants requested notice of the denial for new trial, as provided for in La.C.C.P. Art. 1914 and 2123. Therefore, defendants' delays for appealing commenced *598 to run from the date of denial of their motion for new trial. LSA-C.C.P. Art. 2123. Since defendants' new trial was denied in court and the defendants were not entitled to notice of the denial of their motion for new trial, their suspensive appeal had to be perfected within thirty days of the court's refusal to grant a new trial. Mose v. Brewer, 420 So.2d 225 (La.App. 3 Cir.1982).
The trial court denied defendants' motion for new trial in court on December 13, 1986. Defendants, however, did not file their appeal in this matter until January 17, 1986, and did not file a suspensive appeal bond until February 7, 1986. Since this suspensive appeal was not perfected until more than thirty days after denial of defendants' motion for new trial, this appeal is hereby converted to a devolutive appeal LSA-C.C.P. Art. 2123; Mose, supra.

SUBJECT MATTER JURISDICTION
Defendants contend that the trial court erred in denying their exception of lack of subject matter jurisdiction. The basis of defendants' exception is that LSA-R.S. 23:1035.1, the provision for extraterritorial coverage of the Louisiana Worker's Compensation Act, requires that at the time of injury the employee must either: (1) be employed principally in Louisiana, or (2) be working under a contract of hire made in Louisiana. Defendants contend that at the time of the accident giving rise to this action the plaintiff was neither employed principally in Louisiana nor working under a Louisiana employment contract; and that since the plaintiff is seeking extraterritorial coverage under Louisiana's Worker's Compensation Act, the court lacked subject matter jurisdiction to hear the claim. Plaintiff, however, contends that the trial court was correct in dismissing defendants' exception of lack of subject matter jurisdiction, by finding that the employment contract entered into between plaintiff and defendant, International Moorings and Marine, Inc., was a Louisiana contract.
In order for the employment contract between plaintiff and defendant, International Moorings and Marine, Inc., to be considered a Louisiana contract, the parties' intent should be paramount. Some factors to be considered in determining the parties' intent include the domicile of the parties, the nature of the work to be done, and the place where the employment was initiated. Smith v. Liberty Mut. Ins. Co., 473 So.2d 394 (La.App. 3 Cir.1985); Wilson v. Gulf Ins. Co., 431 So.2d 1095 (La.App. 3 Cir.1983).
Plaintiff was contacted at his home in Pineville, Louisiana by W.L. Adams, a friend of plaintiff, during Adams' attempt to put together a sandblasting and painting crew. After assembling a crew of about five persons from the Pineville area, Adams directed the crew to Mr. Austin Snow, a supervisor with defendant, International Moorings and Marine, Inc., a Louisiana corporation, at the Orange, Texas jobsite. Upon arriving in Orange, Texas plaintiff was immediately put to work and was provided an hourly wage and room and board while working and was promised further employment.
Under these circumstances, and by the testimony of the plaintiff, we find that uncontroverted evidence shows that at the time that plaintiff agreed in Pineville, Louisiana to become part of the sandblasting and painting crew, the plaintiff understood that W.L. Adams had been given authority to hire employees on behalf of defendant, International Moorings and Marine, Inc. Further, the fact that defendant, International Moorings and Marine, Inc., is a Louisiana corporation with offices located in New Iberia, Louisiana, indicates that the intention of the parties was that the contract was one intended to be made in Louisiana. Where virtually all work-related factors are centered in Louisiana, the mere fact that a claimant's actual work was not done in Louisiana will not bar his recovery under Louisiana's worker's compensation laws. Stapleton v. Travelers Ins. Co., 359 So.2d 1051 (La.App. 3 Cir.1978), writ den., 360 So.2d 1176 (La.1978). Since plaintiff's employment was initiated and concluded in Louisiana, and both parties are Louisiana domiciliaries, we conclude that the trial court was not manifestly in error or clearly *599 wrong in finding that the employment contract was a Louisiana contract and that, in fact, the employment contract was one made in Louisiana.

PRESCRIPTION
The accident which is the subject matter of this suit occurred on September 8, 1979. Defendants' worker's compensation insurer's adjuster, Underwriters Adjusting Co., was notified of the accident on September 17, 1979, and began disability payments under the LSHWCA shortly thereafter. Plaintiff had also filed a tort suit against other defendants in District Court in Orange, Texas prior to the institution of this suit for injuries arising out of the September 8, 1979 accident. Defendants contend that the trial court erred in denying their exception of prescription in that neither their payment of benefits to plaintiff under LSHWCA nor plaintiff's institution of the Texas tort suit acted to interrupt prescription, and, since plaintiff's claim was filed more than one year after his injury, plaintiff's claim has prescribed according to LSA-R.S. 23:1209.
LSA-R.S. 23:1209, in pertinent part, provides that claims for worker's compensation benefits prescribe within one year of the accident or injury unless a formal claim has been filed or unless the parties have agreed on payments to be made under the Chapter. The article further provides that where such payments are made, "... the limitation shall not take effect until the expiration of one year from the time of making the last payment ...". Plaintiff was paid benefits under LSHWCA until December 14, 1984, well after the date plaintiff filed this suit for relief under Louisiana's worker's compensation laws. If such payments constitute payments contemplated by LSA-R.S. 23:1209, these payments would clearly act to interrupt prescription.
LSA-R.S. 23:1035.1(2) specifically provides that:
"The payment or award of benefits under the worker's compensation law of another state, territory, province, or foreign nation to an employee or his dependents otherwise entitled on account of such injury or death to the benefits of this Chapter shall not be a bar to a claim for benefits under this act; provided that claim under this act is filed within the time limits set forth in R.S. 23:1209."
It is well established that a worker may be covered under Louisiana's worker's compensation laws, even where a work-related accident occurs outside the state, and that states may have concurrent jurisdiction and concurrent statutory coverage concerning compensation for a worker's injury. Ryder v. Insurance Company of North America, 282 So.2d 771 (La.App. 3 Cir.1973); Mattel v. Pittman Construction Company, 248 La. 540, 180 So.2d 696 (La.1965). Louisiana's state worker's compensation scheme has also been found to have concurrent application with the Longshore and Harbor Worker's Compensation Act. Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822 (La.1982), appeal dismissed, 464 U.S. 802, 104 S.Ct. 48, 78 L.Ed. 69 (1983); Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976), appeal dismissed, 434 U.S. 803, 98 S.Ct. 31, 54 L.Ed.2d 60 (1977).
Considering Louisiana's sufficient interest in the matter of an injury of one of its citizens injured in employment arising from a Louisiana contract, Louisiana should entertain subject matter jurisdiction in this case, in accordance with LSA-R.S. 23:1035.1. "If Louisiana has sufficient interest in the affair to permit its courts to entertain jurisdiction over the subject matter, then it has sufficient interest to see that the tenets of its compensation are carried out." Malone and Johnson, Workers' Compensation § 409, La.Civ.Law Treatise 333. The tenants of LSA-R.S. 23:1035.1 envision coverage of any worker's compensation scheme. There is no reason for this court to believe that the Legislature intended that payments under LSHWCA should not act to interrupt prescription of a claimant's Louisiana based cause of action for worker's compensation, and there is no overriding federal interest which should prevent such an interruption of prescription in this particular case. Poche, supra. Accordingly, we find that *600 defendants' payments under LSHWCA acted to interrupt prescription of plaintiff's suit, and that plaintiff's petition was filed timely. Finding that plaintiff's petition was timely filed, we need not address the issue of whether or not plaintiff's Texas tort suit acted to interrupt prescription.

PLAINTIFF'S PERMANENT TOTAL DISABILITY
The trial court found plaintiff to be permanently and totally disabled. In his Reasons for Judgment, the trial judge did not elaborate on the reasons for the award for permanent total disability except to say that the court's opinion was based on the lay and medical evidence. Defendants contend that the trial court erred in awarding plaintiff permanent total disability benefits in that the plaintiff failed to prove by a preponderance of the evidence both the nature and extent of his disability. We note, however, that although plaintiff was employed as an electrical repairman on a less than full time basis at the time of trial, plaintiff could qualify as permanently and totally disabled under the odd-lot doctrine if he could only perform his job tasks in substantial pain. Culp v. Belden Corp., 432 So.2d 847 (La.1983).
Under the substantial pain theory, a worker who can perform his job duties only while experiencing substantial pain may suffer severely limited employment opportunities for several reasons. First, his pain may restrict him functionally from performing his job duties. Recurrence of severe pain may also cause frequent absenteeism due to a worker's inability to work in pain and his need for medical treatment. An injured worker may also be more susceptible to a second injury or an aggravation of a previous injury, making the employer liable. Under such circumstances, a person working under severe and continuous pain may find his employment opportunities severely limited and should be entitled to an award for total disability. Culp, supra, at pages 849, 850. If a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. Lattin v. Hica Corp., 395 So.2d 690 (La.1981). An odd lot claimant need not be absolutely helpless to qualify for total disability. Id., Lattin, at page 693.
Plaintiff testified at trial that from the date of the accident, on September 8, 1979, until the date of trial he had been in almost constant and sometimes severe pain, often being unable to get out of bed. He complained of being severely limited in his activities due to his pain. He reports being unable to bend, squat, bend forward from his waist, or extend his arms in front or over his head due to pain. His pain interferes with his sleep so that he often sleeps little. Plaintiff's mother, with whom he lived for some time, corroborated his complaints of pain in bed. She testified that while plaintiff was not much of a complainer, he moaned and groaned in his sleep in pain. Prior to the December 8, 1979 accident, plaintiff often worked 12 to 16 hour workdays, whereas plaintiff, at the time of trial, usually missed 1 ½ days of work per week due to pain. Plaintiff's employer, at the time of trial, testified that plaintiff's productivity had decreased so significantly that plaintiff was being paid on a commission basis. None of the several testifying physicians who examined or treated plaintiff disputed that plaintiff's complaints of pain were genuine, and each of the physicians had noted plaintiff's consistent complaints of lower back and leg pain since the accident. One of plaintiff's examining physicians, Dr. T.E. Banks, specifically indicated that he believed that plaintiff's complaints of pain were genuine.
After reviewing the testimony of expert and lay witnesses, we are convinced that, although plaintiff is apparently capable of obtaining temporary employment in the electronics repair field, his services are so limited in quality, dependability and quantity that a reasonable stable market for his services does not exist. Lattin, supra, at page 693.
*601 Defendants introduced in evidence the deposition of Dr. George E. Hearn, a psychologist working in the field of vocational treating and rehabilitation, who testified that after examining plaintiff's depositions, the deposition of Dr. Brodsky, a summary of the deposition of Dr. Lowrey and the deposition of Dr. Banks that, in his opinion, plaintiff could be gainfully employed as a licensed radio/TV technician and as a cashier, bank teller, guard/watchman, dispatcher or sales clerk. When asked, however, whether he recalled any information in Dr. Bank's deposition regarding plaintiff's complaints of pain, Dr. Hearn stated: "I don't remember it specifically." While it is apparent from examining Dr. Hearn's deposition that he considered such factors as plaintiff's education, training and experience in the radio/TV field in determining plaintiff's employment prospects, it is equally apparent that Dr. Hearn did not consider plaintiff's substantial pain which affected plaintiff's ability to work. Simply because plaintiff is deemed capable of performing certain tasks, he should not be deprived of permanent total disability status where performance of those tasks cannot be done without substantial pain. Since the trial court apparently found that plaintiff can no longer work without substantial pain, we will not disturb this finding of fact in the absence of contrary evidence and where the evidence supports a reasonable factual basis for such a finding. Culp, supra, citing Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979).

THE AWARD OF PENALTIES AND ATTORNEY'S FEES
Defendant insurer, Fidelity & Casualty Company of New York, through their claims adjuster, Underwriters Adjusting Company, discontinued payment of plaintiff's disability benefits on December 14, 1984. Thomas J. Bank, a claims adjusting agent for Underwriters Adjusting Company, testified at trial that plaintiff's disability benefits were terminated on December 14, 1984; that in a letter dated March 25, 1983 to the U.S. Department of Labor, a copy of which was sent to plaintiff's attorney, he had authorized plaintiff to see Dr. Lowrey for additional treatment; that plaintiff, to the best of his knowledge at the time, had not sought medical treatment since June, 1982, when plaintiff was seen by Dr. Brodsky; that no medical evidence known by him indicated that plaintiff was, in December, 1984, still disabled; and, that for these reasons, plaintiff's benefits were terminated. Defendants also contend that their claims adjuster's refusal to pay the charges of Dr. Banks and the travel expenses which plaintiff incurred during trips to Houston to see Dr. Brodsky was reasonable, since the charges and expenses were unreasonable and unnecessary. Defendants therefore contend that, since their failure to pay any amounts that might have been due plaintiff under the Louisiana's Worker's Compensation Act was not arbitrary, capricious or without probable cause, the trial court's award of statutory penalties and $3,000.00 in attorney's fees was in error.
In order for plaintiff to recover penalties and attorney's fees from defendants under LSA-R.S. 22:658 and R.S. 23:1201.2, failure to make payments to plaintiff must have been arbitrary, capricious or without probable cause. LSA-R.S. 22:658;[1] LSA-R.S. 23:1201.2. An insurer must make a reasonable effort to determine an employee's exact medical condition before benefits are terminated. Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3 Cir.1985). However, provisions for penalties and attorney's fees are to be strictly construed and utilized only in those instances in which facts negate probable cause for nonpayment. Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241 (La.App. 1 Cir.1983).
Defendants contend that plaintiff's benefits under LSHWCA were discontinued due to a lack of medical evidence indicating *602 that plaintiff was disabled. This lack of evidence was in part due to defendants' failure to approve medical treatment or examination of plaintiff. Although defendants' adjuster did authorize plaintiff to be examined by Dr. Lowrey, Dr. Lowrey had previously, after plaintiff's back surgery, released plaintiff as ready to resume work, with relation to plaintiff's finger injury, and Dr. Lowrey refused to examine plaintiff's back, since another doctor had done so. It was, therefore, entirely reasonable for plaintiff not to seek further treatment or examination from Dr. Lowrey, and it was unreasonable for defendants' adjuster not to seek further medical information before discontinuing plaintiff's disability benefits. The purpose of the penalty provisions of worker's compensation statutes is to deter insurers from unjustifiably terminating payments and assuming attitudes of indifference to difficulties incurred by injured employees. Guillory v. Travelers Insurance Co., 294 So.2d 215 (La.1974); Eaton v. General Accident Group, 292 So.2d 773 (La.App. 4 Cir.1974). Under the circumstances, we cannot say that the trial court manifestly erred in finding that defendants' adjuster was arbitrary, capricious or without probable cause in discontinuing plaintiff's benefits and in denying plaintiff's expenses for treatment by Dr. Banks. We also find that the award of attorney's fees of $3,000.00 is reasonable.
Although the trial court's award for statutory penalties and attorney's fees is proper and reasonable, the arbitrariness, capriciousness or lack of probable cause resulted from the action or inaction of the defendant, Fidelity and Casualty Company of New York, and their adjuster, Underwriters Adjusting Company, and not from the action or inaction of defendant, International Moorings and Marine, Inc. The worker's compensation insurer, not the employer, is liable for penalties and attorney's fees. Fontenot v. Great Southern Oil & Gas Co., 434 So.2d 621 (La.App. 3 Cir. 1983); Wiley v. Southern Cas. Ins. Co., 380 So.2d 214 (La.App. 3 Cir.1980). Accordingly, the judgment, insofar as the portion of the judgment awarding statutory penalties and attorney's fees against defendants, in solido, should be amended to grant judgment only against the defendant, Fidelity and Casualty Company of New York, for the statutory penalties and for attorney's fees in the amount of $3,000.00.
For the foregoing reasons the judgment of the trial court, dated September 27, 1983, denying defendants' exceptions of subject matter jurisdiction and prescription is affirmed. Insofar as the judgment on the merits of the trial court, dated December 5, 1985, the judgment is affirmed except to amend the portion of the judgment awarding plaintiff statutory penalties on all sums due and also awarding attorney's fees in the amount of $3,000.00 against defendants, in solido. The judgment is amended to cast defendant, Fidelity and Casualty Company of New York, for the statutory penalties on all sums owed to plaintiff and for attorney's fees in the sum of $3,000.00.
AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.
NOTES
[1] Under R.S. 23:1201.2, as amended by Acts 1983, 1st Ex.Sess., No. 1, § 1, effective July 1, 1983, R.S. 22:658 is no longer applicable to claims brought under Louisiana's worker's compensation laws.