GASKINS, J.
_|jln this appeal, the employer seeks review of a judgment holding that the workers’ compensation judge (WCJ) had extraterritorial jurisdiction pursuant to the Louisiana Workers’ Compensation Law (LWCL) and awarding benefits, penalties and attorney fees in favor of the claimant. We reverse the WCJ’s ruling.
FACTS
The claimant, Andrea Hughes, is a Teamster truck driver who lives near Goodwill, Louisiana. In March 2006, she received a phone message from Neil Grace, a Teamster steward who worked for T.G. Mercer Consulting Services. It concerned a job hauling pipe for Mercer from Granbury, Texas to Hillsboro, Texas. The message, which was saved and played at trial, was as follows:
*956 Hi. This is Neil Grace and I just want to let you know that everything is good. They’ll be ready to put you to work Monday when you get there. So, if there’s any questions, please call me, [phone number], Y’all have a good day. Appreciate you. Bye-bye.
After receiving the message, the claimant phoned Mr. Grace to let him know that she was coming. The claimant and her fiancé, Dennis Self, who was also a truck driver, packed up her trailer and traveled to Texas where they both began hauling pipe for Mercer. A week later, on April 10, 2006, she was injured in an accident when another 18-wheeler rear-ended her truck. She allegedly received injuries to her head, neck and hands.
On March 27, 2008, the claimant filed a disputed claim for compensation with the Louisiana Office of Workers’ Compensation. She asserted that her benefits were reduced on December 26, 2007, and |2terminated on March 17, 2008.[1] The claimant also contended that Mercer refused to pay for physical therapy recommended by Dr. Douglas Liles, her orthopedic doctor, and a nerve block recommended by Dr. Bernie McHugh, her neurosurgeon. She requested temporary total disability (TTD) benefits or alternatively supplemental earning benefits (SEBs), with penalties and attorney fees. Mercer filed a general denial on April 23, 2008.
On May 5, 2008, the claimant filed a motion for medical treatment, requesting that the employer be ordered to pay for a thoracic medial branch block recommended by Dr. John Ledbetter, her pain management doctor.
Mercer filed a motion for summary judgment; it alleged that the claimant received workers’ compensation pursuant to Texas state law, that she was working under a contract of hire made in Texas, that she was injured in Texas, and that her employment was principally located in Texas. Consequently, Mercer argued that there was no extraterritorial coverage under LWCL and the claimant was not entitled to benefits under Louisiana law.
On October 31, 2008, the claimant filed an opposition to the motion for summary judgment. She argued that the contract to hire her was made in Louisiana, thereby giving this state jurisdiction under La. R.S. 23:1035.1. In support of her argument, the claimant submitted a tape of the telephone message left by Mr. Grace, as well as her own affidavit. In the affidavit, she stated that she would not have traveled to Texas if there had been any | squestion about her being hired already. On November 14, 2008, the motion for summary judgment was denied due to the disputed material facts.
Trial was held on March 20, 2009. In addition to her own testimony, the claimant presented the medical records of her three treating physicians. She testified that she felt “very assured” that she had the job with Mercer before she left Louisiana. Had she not, she testified that she would not have packed up her trailer and made the trip to Texas. However, she admitted that she was aware that she had to pass a drug test and fill out paperwork in Texas before she began the job. She also conceded that the phone call was her first contact with Mr. Grace.
The employer presented the live testimony of Bruce Monroe, Mercer’s executive vice president in charge of operations, as *957 well as the deposition testimony of Mr. Grace and Dr. Liles, the claimant’s orthopedic doctor. Mr. Monroe testified that Mercer is a specialty pipeline company dealing with line pipe; its drivers operate specialized trucks. According to Mr. Monroe, it obtained its drivers through a referral system that included union stewards like Mr. Grace calling drivers to show up at a location for a job; however, not all drivers who showed up are hired. The drivers were not actually hired by the company until after they filled out paperwork, passed drug tests and demonstrated their driving abilities. According to Mr. Monroe, Mr. Grace represented the union, not the company, and had no authority to hire anyone on Mercer’s behalf. Mr. Grace likewise stated in his deposition that union stewards lacked that authority.
|4The WCJ ruled that she had jurisdiction under the extraterritorial jurisdiction provision of LWCL because the contract of hire occurred in Louisiana. In so ruling, she found that Mr. Grace had apparent authority to hire the claimant, that he did not extend conditions of hire, i.e., completion of an application or the passing of a drug test, and that the claimant was justified in believing that she was hired. She awarded TTD benefits of $76 per week from December 8, 2007, through March 21, 2008, and $450 per week from March 21, 2008, to the present and continuing in accordance with law, plus legal interest from due date of each payment until paid. Penalties of $4,000 and attorney fees of $6,000 were also awarded. Mercer was ordered to pay for all reasonable and necessary medical treatment, including but not limited to treatments by Dr. Ledbetter and Dr. McHugh. This included the MRIs recommended by Dr. McHugh. However, the WCJ found that the condition of the claimant’s thumbs and surgeries thereto were not related to her work injuries. Costs were assessed against Mercer.
The employer filed a suspensive appeal. The claimant answered the appeal, seeking additional attorney fees for her lawyer’s handling of the case on appeal.
EXTRATERRITORIAL COVERAGE UNDER LA. R.S. 23:1035.1

Law

La. R.S. 23:1035.1, the statute governing extraterritorial coverage of the LWCL, provides, in relevant part:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits | .¡provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
In determining whether a contract of hire is a Louisiana contract in a workers’ compensation case, the parties’ intent should be paramount. Dodd v. Merit Electrical, Inc., 44,035 (La.App.2d Cir.4/15/09), 8 So.3d 849; Haney v. B E & K Construction, 30,825 (La.App.2d Cir.8/19/98), 716 So.2d 514. Some factors to consider in determining the intent of the parties include domicile of the parties, the nature of the work to be done, and the place where the employment was initiated. Dodd, supra; Harvey, supra.
The determination as to whether a claimant was working under a contract of hire made in Louisiana is a factual one. See Baldwin v. North American Energy *958 Services, 2007-667 (La.App. 3d Cir.10/31/07), 970 So.2d 101, writ denied, 2007-2310 (La.2/1/08), 976 So.2d 717. Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Dodd, supra. In applying the manifest error-elearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Dodd, supra. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel its own inferences and evaluations are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993).
In eases involving communication between potential employees and union representatives, the courts have generally found no agency relationship between the union representative and the employer. In Molinario v. Hartford Insurance Company, 462 So.2d 253 (La.App. 4th Cir. 1984), a boilermaker responded to his local union’s invitation and traveled to Massachusetts to work on a project. His first contact with the employer was when he reported to work in Massachusetts, where he was later injured. The employer had no contacts with the state of Louisiana. The appellate court affirmed the lower court’s finding that no contract of hire was made in Louisiana and thus no jurisdiction existed under La. R.S. 23:1035.1(1)(b).
Likewise in Jarrell v. Employers Casualty Ins. Co., 499 So.2d 947 (La.App. 3d Cir.1986), writ denied, 501 So.2d 199 (La.1986), the appellate court affirmed a trial court ruling in the employer’s favor. There a Texas employer notified a Texas local of its need for workers; the Texas local, in turn, contacted a Louisiana local of which that plaintiff was a member. A business agent of the Louisiana local informed the plaintiff of the employment opportunity in Texas. The plaintiff reported to the Texas local and was then informed where to report for work. After completing paperwork, he was hired; he was later injured in Texas. The court found no 17evidence that the employer had given the Louisiana local actual or implied authority to hire on its behalf.
In Welch v. S.J. Groves & Sons Company, 555 So.2d 647 (La.App. 4th Cir.1989), writ denied, 558 So.2d 603 (La.1990), the plaintiff was contacted by the business manager of his local Louisiana union, who had been notified by a New Jersey union, of employment for heavy equipment operators in New Jersey. He reported to the New Jersey union hall where he was told where to report. He went to the job site and filled out application forms for the employer. He began working for the employer and was subsequently injured. The appellate court rejected the plaintiff’s argument that the Louisiana local acted as a hiring agent for the employer; therefore, it concluded that La. R.S. 23:1035.1 was not applicable because the contract of hire was not made in Louisiana.
However, in Mattel v. Pittman Construction, Company, 248 La. 540, 180 So.2d 696 (1965), an ironworker reported to the New Orleans union hall where he was told that the employer had a job available in Gulfport, Mississippi. He accepted the job, was made aware of the terms as to such things as wages and time, and left for Gulfport. Upon his arrival, he was immediately put to work; that same day, he was *959 injured. The trial court dismissed the suit due to lack of jurisdiction and the appellate court affirmed. The supreme court reversed, finding that:
As a general rule, in bargaining or in other dealings with employers, a union represents only its members. However, when it and an employer enter into an arrangement such as is evidenced here the union becomes the agent of the employer (for employment purposes) and is authorized to make a job offer for the latter. Accordingly, the |,^acceptance of the offer by a prospective employee completes the contract of hiring.
[[Image here]]
In our opinion (based on the evidence adduced) it was contemplated that when the men ‘ordered’ by [the employer] were offered jobs on the Gulfport project by the union representative in New Orleans, and they agreed to go to the site, such workers were then hired and would be put to work under that contract of hiring. Therefore, since both the job offer to this plaintiff and its acceptance took place in Louisiana the contract is one in which this state has an interest and its courts have jurisdiction to apply the Louisiana compensation statute.
Factors considered by the supreme court in reaching its decision included the lack of evidence that the plaintiff made an application for employment, the apparent lack of authority for the foreman to reject any employee sent as a result of the employer’s request for ironworkers, and the absence of any suggestion that the employer had ever rejected a union employee sent to a construction site at its request.
Cases involving apparent authority have had mixed results. In Wilson v. Gulf Insurance Company, 431 So.2d 1095 (La.App. 3d Cir.1983), a driller was interviewed in Texas and said he understood he could hire a crew, although his crew would have to appear in Tyler, Texas, for final acceptance. Upon his return to Louisiana, he hired several hands including the claimant. When they went to Texas, the hands were issued equipment and checked into a hotel before they filled out any applications. The appellate court concluded that the employer had clothed the driller with apparent authority to hire the claimant, who could not be charged with knowledge of the employer’s internal personnel procedures. The court found that the collection of data upon the claimant’s arrival in Texas was a|fl“mere formality.” In Lakvold v. Stevens Transport, 95 0866 (La.App. 1st Cir.12/15/95), 665 So.2d 828, the plaintiff— who later suffered a stroke while working for the employer in New Jersey — was solicited in Louisiana by a recruiter for the employer and filled out an application in Louisiana. According to the appellate court, the plaintiffs employment began when the employer accepted his application and the contract of hire was made in Louisiana. While the employer contended that the plaintiff was not hired until he completed a one-week orientation in Dallas, the court found that the plaintiff could not be charged with knowledge of the company’s internal personnel procedures. It also noted that the employer sent the plaintiff money to cover his travel expenses and living expenses during orientation and dismissed additional paperwork completed in Texas as “merely a formality.”
Similarly, in Granger v. F.F.E. Transportation Service, 1998-127 (La.App. 3d Cir.5/13/98, 713 So.2d 667). 713 So.2d 667, a recruiter for the employer, which was based in Texas, visited a Louisiana truck driving school seeking drivers. The plaintiff and the recruiter discussed the salary that the plaintiff would receive during training. The plaintiff completed an appli *960 cation in Louisiana which she sent to the recruiter, who worked in the employer’s Shreveport office; the application was forwarded to Dallas. The plaintiff was sent a paid bus ticket to travel to Dallas for orientation and training. She was later injured in Indiana in a work-related accident. The court found that the recruiter had apparent authority to hire recruits which led the plaintiff to believe that she was hired before she left Louisiana.
In Chance v. Fidelity and Casualty Company of New York, 509 So.2d 593 (La.App. 3d Cir.1987), the plaintiff was contacted at his Louisiana home by a friend putting together a sandblasting and painting crew for a Texas work site. The agreement at which they arrived covered wages, room and board, and future employment. Upon his arrival in Texas, the plaintiff signed the necessary paperwork for the employer and immediately went to work. He was injured on his fifth day of work. The court found that the uncontro-verted evidence showed that at the time he agreed to join the crew, the plaintiff understood that the friend had been given authority to hire employees on the employer’s behalf. The court found that the employment contract was made in Louisiana.
However, in Smith v. Liberty Mutual Insurance Company, 473 So.2d 394 (La.App. 3d Cir.1985), the court found a phone call during which employment was discussed by the plaintiff at his Louisiana home and the general manager of the Texas-based employer was a “preliminary conference.” At a subsequent interview with the owner of the company, they discussed and settled wages and place of employment.- However, the employer required the plaintiff to secure a medical release pertaining to a prior health situation as a condition of the employment. The plaintiff obtained the release and began work for the employer. The court held that the contract was made in Texas when the plaintiff accepted the job offered at a fixed and determined salary. It found that the plaintiff was aware that the general manager lacked authority to hire him over the phone and that the owner made the ultimate employment decisions. A similar result was |,(reached in Hurtado v. CJC Service, Inc., 05-736 (La.App. 5th Cir.3/14/06), 926 So.2d 624, where a supervisor for the Georgia employer called the plaintiff in Louisiana. Although the salary was not settled, the plaintiff testified that the conversation ended with an “understanding” that he had the job. He traveled to Georgia where he filled out a form and interviewed with the company’s owner and operations manager, who testified that the supervisor lacked authority to hire personnel. The court found that he contract of hire was not made in Louisiana.
The courts have found in favor of the employee and held that the contract of hire was made in Louisiana in several cases involving phone calls placed by employers to Louisiana workers at home. See Welch v. Travelers Insurance Company, 225 So.2d 623 (La.App. 1st Cir.1969), writ refused, 254 La. 852, 227 So.2d 594 (1969) [the plaintiff was called in Louisiana, accepted the job offer, and left for Mississippi the next day]; Harvey v. B E & K Construction, supra [plaintiff spoke to personnel manager on the phone from his Louisiana home, learned details of job and accepted it; would not have traveled to Virginia unless certain of definite job on arrival]; Sigler v. Rand, 2004-1138 (La.App. 3d Cir.12/29/04), 896 So.2d 189, writ denied, 2005-0278 (La.4/1/05), 897 So.2d 611 [plaintiff 112called at Louisiana home by supervisor for employer; contract mailed to him at Louisiana home where he signed it before mailing it to employer’s Houston office]; Petticrew v. Abacus Capital Corp./North American Kiln Service, Inc. & LWCC, 07-405 (La.App. 5th Cir.12/11/07), *961 974 So.2d 692, writ not considered, 2008-0089 (La.3/7/08), 977 So.2d 914 [plaintiff called at Louisiana home by employee of New Jersey employer; after plaintiff agreed to accept job involving work in Pennsylvania, employer sent him a plane ticket and paid per diem and travel expenses from time plaintiff left home; only completed paperwork two or three days after beginning job]. See also Jepsen v. B-Con Construction Co., Inc., 475 So.2d 112 (La.App. 2d Cir.1985) [while in Louisiana, the decedent called supervisor for employer, which had home office in Louisiana; supervisor told him job available in Memphis; application filled out in Memphis but approved at Louisiana home office]; Baldwin, swpra [while claimant initiated phone call to supervisor for employer, all negotiations, drug testing, paperwork and agreements were performed and finalized in Louisiana; employer reimbursed claimant’s travel costs to go to Nevada]; Dodd, supra [Louisiana claimant and her husband contacted Georgia employer to seek jobs and were later called and told they were hired; paperwork sent to Louisiana to be filled out; drug test in Georgia was “formality” because no drug use; would not have moved entire family — including school-age children — to Georgia without reasonable expectation of jobs upon arrival].
Our review of the jurisprudence has also found several other cases involving the hiring of truck drivers. The case of Robinson v. Independent Freightway, 94-786 (La.App. 5th Cir.4/16/96), 673 So.2d 1091, writ denied, 96-1246 (La.6/21/96), 675 So.2d 1088, involved an Illinois trucking company and a Louisiana worker who submitted an employment application to the employer in Illinois, which accepted his offer to work for it. The employee signed the contract in Louisiana, and the employer | ¶(¡accepted the contract by signature in Illinois; the court concluded that the acceptance of the contract in Illinois gave rise to an Illinois contract of hire. In Parr v. U.S. Express Enterprises, Inc., 06-320 (La.App. 5th Cir.10/31/06), 946 So.2d 178, the plaintiff submitted an application at the employer’s “drop yard” in Louisiana for a job as an “over the road” truck driver; she was subsequently called and asked to attend a drivers’ orientation in Oklahoma. She admitted that she knew before leaving Louisiana that she had to complete orientation, pass her physical, and pass a road test before she could be hired as a driver. Despite her testimony that she would not have traveled to Oklahoma for an interview without a strong belief that she would be able to pass all of the required tests, the court found that the contract of hire was not made in Louisiana.

Testimony

Mr. Grace, the union steward, testified that he did not recall talking to the claimant. He said that he refers — not hires— drivers; Mr. Monroe hired Mercer’s drivers. He admitted that had he gotten the message he left, he “probably” would have thought that he had the job. However, as a driver himself, he testified that he knows that there are no guarantees and that a driver is not necessarily hired even if told that he is being “put to work.”
Mr. Monroe, Mercer’s executive vice president, testified that Mr. Grace is just a driver who was named a steward by the union. As such, he has no authority to hire for Mercer. He verified that Mercer did not send the claimant any paperwork in Louisiana or any travel money. As the person in 114charge of hiring for Mercer, he did not call her in Louisiana. He did hire the claimant when she showed up in Texas.
Because Mercer is in a very specialized area of the trucking industry, Mr. Monroe indicated that the driving test, in which the prospective driver demonstrates an ability *962 to drive the sort of truck used by Mercer, is particularly important. He also testified that experience in driving these trucks is key. Mr. Monroe stated that drivers in this specialized industry are aware that federal law mandates the paperwork, the drug test, and the driving test that Mercer required; thus, it was unnecessary to acquaint prospective drivers with the need for compliance with these provisions. Both Mr. Monroe and Mr. Grace stated that union stewards do not have the authority to hire employees for Mercer.
The claimant admitted that Mr. Grace never told her that he had authority to hire for Mercer or what type truck needed to be driven. She was unable to say definitely that he told her what hours she would work; at trial, she indicated that he had, but in her deposition testimony she said he had not. She initially testified that she was told what the wages would be “when we went out there.” However, when questioned further, she indicated that she was referring to the phone call she got. The claimant also admitted that Mercer did not send her any paperwork in Louisiana or cover her travel expenses from Louisiana to Texas.

Discussion

The jurisprudence dictates that in determining whether a contract of hire is a Louisiana contract of hire, we first look to the intent of the parties, |15which is paramount. Among the factors to be considered in making this determination are the domiciles of the parties (the claimant resides in Louisiana whereas the employer is based in Texas) and the nature of the work to be done (the trucking project here involved transporting pipeline between two locations in Texas.)
The place where employment was initiated is determined by looking at the facts of each case. As correctly argued by the employer, the only factor in favor of the claimant’s position that she was hired before she left Louisiana is the message left on her answering machine at her Louisiana home by the union steward, Mr. Grace, that she would be “put to work” upon her arrival in Texas. Based upon this, the WCJ found that Mr. Grace was clothed with apparent authority to hire on behalf of Mercer and thus held that there was a Louisiana contract of hire. Following our review of the record and the jurisprudence, we find that the WCJ’s ruling was manifestly erroneous in this respect.
The claimant had never spoken to Mr. Grace before and did not know him. However, the record demonstrates that she knew that he was a union steward, and she was admittedly familiar with the referral network by which drivers obtained jobs through such union stewards. She conceded that he never told her that he had authority from the employer to hire on its behalf.
Lacking in this case are many of the indicia found in other cases. No paperwork was sent to the claimant here in Louisiana, as in the Sigler, Baldwin, or Dodd cases. No work was performed prior to filling out paperwork, as in Pelticrew, supra. The claimant was not given work 11fiimplements before filling out applications, as in Wilson, supra. The employer did not pay for the claimant’s travel or living expenses, as in the Lakvold, Granger, or Baldwin cases. Evidence of agreement on definitive terms of wages and work hours are lacking, contrary to Mattel, supra, Gran-ger, supra, or Chance, supra.
Nothing in this record suggests that the employer lacked the ability to reject a union worker sent in response to a request for workers or that it had failed to reject any such workers in the past, as in Mattel, supra. To the contrary, the testimony indicated that Mercer routinely rejected drivers. The evidence showed that upon *963 arrival at the employer’s work place, the prospective driver had to produce evidence of union membership and paid dues, as well as demonstrate proficiency in driving the specialized trucks utilized by Mercer and freedom from drugs; the lack of any of these was grounds for rejection by the employer. In light of the testimony that the drug and driving tests were mandated by federal law for this particular field, we are unable to discount them as “mere formalities,” like the drug test in Dodd, supra, and the paperwork in the Wilson and Lakvold cases.
We find that the WCJ was manifestly erroneous in finding that Mr. Grace had apparent authority to hire, that he hired the claimant without any condition including the legally mandated drug test, that a contract of hire was made in Louisiana, and that La. R.S. 23:1035.1(l)(b) was applicable. Accordingly, the judgment rendered in favor of the claimant is reversed in its entirety.
| ^CONCLUSION
The WCJ’s ruling is reversed. Costs are assessed to the appellee, Andrea Hughes.
REVERSED.
CARAWAY, J., concurs with written reasons.

. These benefits were paid to the claimant pursuant to the workers' compensation laws of Texas.