DREW, J.
 

 |tIn this workers’ compensation case in which the accident occurred in Maryland,
 
 *851
 
 the sole issue is whether the claimant’s contract of hire was made in Louisiana so that the Office of Workers’ Compensation (“OWC”) had subject matter jurisdiction over the claim. The WCJ found that the contract of hire was made in Georgia. We conclude that the WCJ was clearly wrong in making this finding, and reverse the judgment sustaining the exception of lack of subject matter jurisdiction and dismissing the claim.
 

 FACTS
 

 Melissa Dodd, an electrician’s helper, and her husband Ernest Dodd, an electrician, were hired in March of 2007 by Merit Electrical, Inc. (“Merit”) to work in Georgia.
 
 [1]
 
 The Dodds moved their family from Louisiana for the positions. Melissa was subsequently transferred to Maryland to work on another Merit project there.
 

 On October 10, 2007, Melissa was allegedly injured while at work for Merit in Maryland. She injured her back picking up a heavy piece of conduit. Melissa originally received workers’ comp benefits in Maryland, but then decided to pursue benefits in Louisiana.
 

 Melissa filed a disputed claim for compensation form with the OWC against Merit and its insurer, Liberty Mutual Insurance Company. Merit filed the exception of lack of subject matter jurisdiction. Merit claimed the OWC lacked subject jurisdiction over Melissa’s workers’ compensation claim because the accident occurred outside of Louisiana, Melissa’s employment was not principally localized in Louisiana, Melissa’s contract 12of hire was executed in Georgia, and Melissa did not elect the provisions of Louisiana’s workers’ compensation law as her exclusive state workers’ compensation remedy. Melissa asserted that extraterritorial jurisdiction applied because she was hired in Louisiana. The WCJ sustained Merit’s exception and dismissed Melissa’s claim. Melissa now appeals.
 

 DISCUSSION
 

 Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2.
 

 La. R.S. 23:1035.1 provides extraterritorial coverage of the provisions of the Louisiana workers’ compensation laws. It states, in part:
 

 (1) If an employee, while working out: side the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
 

 (a) his employment is principally localized in this state, or
 

 (b) he is working under a contract of hire made in this state.
 

 [[Image here]]
 

 (4) Notwithstanding the above, an employee may elect as his exclusive state workers’ compensation remedy the provisions of Louisiana’s workers’ compensation law....
 

 Melissa contends neither that her employment was principally located in Louisiana, nor that she elected to have Louisi
 
 *852
 
 ana’s workers’ compensation law serve as her exclusive state workers’ compensation | ¿remedy. That leaves only “working under a contract of hire made in this state” as the basis for the exercise of extraterritorial coverage of Louisiana’s workers’ compensation law in this instance.
 

 In determining whether a contract of hire is a Louisiana contract in a workers’ compensation case, the parties’ intent should be paramount.
 
 Haney v. B E & K Const.,
 
 30,825 (La.App. 2d Cir.8/19/98), 716 So.2d 514. Some factors to consider in determining the intent of the parties include domicile of the parties, the nature of the work to be done, and the place where the employment was initiated.
 
 Id.
 

 Ernest, who was at home in Farmerville, Louisiana, at the time, called Donnie Thornton, a Merit job superintendent in Georgia, to inquire about the availability of jobs for himself and Melissa. Thornton replied that jobs were available and for them to send their resumés.
 

 According to Ernest, after they sent their resumés to Thornton as instructed, Thornton called them to say that they were hired and he was sending paperwork to them to be filled out and returned. Patrick Borden, Merit’s safety manager at the time, testified that Thornton called Ernest and asked if he was interested in a job. The Dodds filled out the paperwork, faxed it to Thornton, and brought it with them to Georgia.
 

 Merit entered four one-page documents into the record at the hearing on the exception. These documents were an “Agreement by Applicant,” a page from Merit’s safety manual, the custody and control form for a drug screen, and an “Employee’s Record.”
 

 |4The agreement by applicant, which is part of the hiring application, was signed by Melissa and dated March 19, 2007. The agreement stated that as a condition to hire, Melissa agreed to submit to physical exams, including blood and urine tests, and that her initial employment may be contingent upon the results of those exams. It also stated that no person except the president of Merit had the authority to bind Merit to enter into any agreement with Melissa regarding the duration or any of the terms or conditions of her employment, and that no such agreement was enforceable unless in writing and signed by the president.
 

 The page from Merit’s safety manual states that “employees are required as a prerequisite to employment ... to cooperate with alcohol and drug testing procedures.” It further states, “Any offer of employment that may be extended to an applicant is conditioned upon the applicant’s successful completion of a pre-em-ployment alcohol and drug screen.” The custody and control form for the drug screen stated that the sample was taken and tested on March 19, 2007.
 

 The “employee’s record” contains Melissa’s personal information. It reports an effective date of March 19, 2007. Georgia was filled in as the state for tax purposes. This document is part of Merit’s hiring package.
 

 Melissa testified that part of the hiring package, including the employee’s record, was filled out in Farmerville after it was sent to the Dodds by Thornton. They then faxed the completed forms to Thornton and brought the forms with them to Georgia. Melissa denied receiving any of the safety manual in Louisiana. Melissa explained that the reason the | ^documents were dated March 19 even if they had been completed earlier was that they were instructed to date the documents with the date they were supposed to start working.
 
 *853
 
 Melissa was placed on Merit’s payroll on March 19, 2007.
 

 Borden stated that the agreement by applicant and employee’s record would have been filled out at the same time when the drug screen was performed. Borden did not believe that any of Melissa’s hiring package documents were prepared in Louisiana; however, he did not know if Thornton had sent any papers to the Dodds to fill out before they left Louisiana.
 

 Borden insisted that before anyone becomes a Merit employee, she or he must first undergo a drug screen and fill out an application onsite. Borden recalled that Melissa’s application was filled out in Savannah, Georgia.
 

 Melissa does not dispute that she was not hired until March 19, when she took and passed the drug screen. She was aware that any offer of employment was contingent upon passing the drug test. Ernest knew from Thornton that they would have to take the drug test when they arrived in Georgia, and that passing the drug test was a condition to being hired. Ernest believed that he was hired once he finished the drug test.
 

 Uprooting their family and moving to Georgia was not easy for the Dodds. They had to take their children out of elementary and middle schools in Farmerville. They drove over 800 miles in two trucks and while hauling a fifth-wheel trailer. Ernest and Melissa both said they would not | (¡have done this if they did not believe they had jobs waiting for them in Georgia. Melissa knew they would pass the drug screens because they did not use drugs.
 

 Ernest wanted to make certain that he and his wife had the jobs before they left for Georgia. He recalled that when Thornton told him over the phone that he had the job if he wanted it, he told Thornton that he wanted to have the paperwork sent to him before he moved his family. Thornton faxed the paperwork. The Dodds asserted that they filled it out, then faxed it back to Thornton.
 

 The case of
 
 Harvey v. B E & K, supra,
 
 is factually similar to this matter. In
 
 Harvey,
 
 the claimant, a boilermaker, had worked for B E & K since 1991. He was injured in 1994 while working in Hopewell, Virginia. Prior to that, Harvey had been working in Mobile, Alabama. He spoke to his foreman about the Hopewell job before leaving Alabama but did not get any job details. When Harvey returned to his home in Louisiana, he called B E & K’s personnel manager about the Hopewell job. After learning some of the job details, he accepted it. Harvey testified that he would not have left his home and driven to Virginia if he was not certain that he had a definite job upon arrival.
 

 When Harvey arrived in Virginia, he completed his paperwork, drug test and physical. Nevertheless, the court concluded that the evidence supported the WCJ’s finding that an employment agreement had been reached in the phone conversation with Harvey at his Louisiana home.
 

 |7The determination as to whether a claimant was working under a contract of hire made in Louisiana is a factual one.
 
 See Baldwin v. North American Energy Services,
 
 2007-667 (La.App. 3d Cir.10/31/07), 970 So.2d 101,
 
 writ denied,
 
 2007-2810 (La.2/1/08), 976 So.2d 717. Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840 (La.7/1/97), 696 So.2d 551. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Id.
 
 When there is a conflict in the
 
 *854
 
 testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel its own inferences and evaluations are as reasonable.
 
 Rosell v. ESCO, 549
 
 So.2d 840 (La.1989);
 
 Arceneaux v. Domingue,
 
 365 So.2d 1330 (La.1978). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880 (La.1993).
 

 The record established that there were discussions concerning the job positions between Ernest and Thornton while the Dodds were still in Louisiana. Merit disputes that hiring documents were completed in Louisiana; however, Thornton did not testify, so his version of events is unavailable.
 

 [RThe provisions in the documents in the record that employment was conditioned upon passing an alcohol and drug screen may have been an attempt to circumvent the effect of
 
 Harvey, supra.
 
 It does not state in
 
 Harvey
 
 that Harvey knew the job was his if he passed the drug test and physical, but certainly it would not be unreasonable to assume that despite whatever Harvey was told in Louisiana, he knew that he would not have gotten the job if he had flunked the drug test or physical.
 

 Another attempt to circumvent
 
 Harvey
 
 has been the provision in the agreement by applicant that no person except Merit’s president had the authority to bind Merit to enter into any agreement with Melissa regarding the duration or any of the terms or conditions of her employment, and that no such agreement was enforceable unless in -writing and signed by the president. This agreement was part of the application. If, as testified by Borden, a prospective employee must fill out an application onsite, then Melissa would not have been privy to this provision when Ernest and Thornton engaged in conversation about the job.
 
 [2]
 
 In addition, Melissa began working for Merit, yet the record does not contain a written agreement signed by the president regarding the terms and conditions of Melissa’s employment.
 
 [3]
 

 Melissa had a reasonable expectation that she had the job before she left Louisiana for Georgia. Although she knew that a condition of her being hired was a negative drug screen, this was a mere formality as she did not |ause drugs. Of course, Melissa passed the drug test and began working for Merit.
 

 Based upon our review of this record, we conclude that the WCJ was clearly wrong in finding that the contract of Melissa’s hire was not made in Louisiana. The exception of lack of subject matter jurisdiction should have been denied. The judgment dismissing Melissa’s claim is reversed, and the matter is remanded to the WCJ for further proceedings.
 

 DECREE
 

 At appellees’ cost, the judgment is REVERSED and the matter REMANDED.
 

 [1]
 

 . Merit’s corporate office is located in Baton Rouge.
 

 [2]
 

 . Borden testified that Melissa filled out her application in Georgia. Merit states in its brief that Melissa signed the agreement of applicant in Louisiana.
 

 [3]
 

 . The employee’s record has a signature for the line "Authorized By:” but it does not indicate exactly whose signature it is.