CARAWAY, J.
|)With an out-of-state employer, the injured Louisiana employee now claims workers’ compensation benefits for an accident occurring in another state. The. employer objected to jurisdiction of the Office of Workers’ Compensation and the application of Louisiana’s workers’ compensation law. The workers’ compensation judge denied the employer’s exception, and we granted supervisory review of that ruling. For the following reasons, we reverse.

Facts

In 2014, Levi Williams (“Williams”) was employed as a truck driver for Morris Transportation, Inc. (“MTI”). MTI is located in. Arkansas. On April 20, 2014, Williams sustained injuries in Mississippi as a result of an accident while driving an MTI truck.
Williams initially applied for and received both medical and indemnity benefits under the workers’ compensation laws of Arkansas. Williams continued to receive these benefits until he was released to work. Notwithstanding, in June 2014, Williams sought workers’ compensation benefits under Louisiana law. Subsequently, MTI filed an exception and answer, asserting a lack of subject matter jurisdiction.
A hearing took place before the workers’ compensation judge (“WCJ”) concerning the lack of subject matter jurisdiction. The witnesses who appeared were Williams, Tracy Graves (“Graves”), employee of MTI, and Timothy Mark Morris (“Morris”), president of MTI.
^Williams testified that he is a resident of Monroe,- Louisiana. He stated that he has been driving trucks since 1994 and had worked for MTI from 2001 through 2006. He worked for a different company between 2006 through 2007. In 2007, Williams called MTI to see if he “could come back.” He spoke to Sammy Brown, the then safety director. Williams stated that during that phone conversation, he thought he was already hired because Brown “said I could come on back, they got-a truck on the yard.” Brown also told him he would be making 36c per mile.
Williams stated that his wife and stepdaughter dropped him off at the office in Hamburg, Arkansas, the following day. He recalled signing the driver qualification form, but was not required to take a driving test or drug test. He testified that after he signed the paperwork, he got his truck, loaded up and started work that same day. He knew that Morris owned the company, but thought that Brown had hiring authority because “he [was the] safety director. I mean, he mainly [was] the one that hire you and stuff. I mean, you know, he hired me.”
Graves testified that she was a safety clerk with MTI in May 2007 and knew that Williams had worked for MTI from 2001-2006. She confirmed receiving a call from Williams about employment in May 2007. Graves could not recall the specifics of'the conversation, but stated she “would have told him to come in and let’s fill out an application and work up the process.” She testified that there was no offer of employment in her' phone conversation with Williams.
l.sGraves identified a document, “driver qualification form,” that Williams signed on May 29, 2007. She testified that a potential driver employee is required to provide information on the driver qualification form. She stated that once an' applicant signs the form, it gives MTI “the authority to check his past employment, check his past drug history, run an NBR, which shows ... any tickets he may have, *138 and a DAC, showing his past history.” She indicated’ that a driver could not be completely hired before he signed the driver qualification form. Graves also acknowledged that Brown was the safety supervisor in 2007.
Timothy Morris testified that completion of the driver qualification form is company policy for employment that meets federally required regulations. He stated that MTI’s principal place of business, is Hamburg, Arkansas, and .the company has no satellite offices. He explained that MTI is a truckload .carrier that primarily runs routes “from the South, the Southeast up to the Midwest.” .
At the conclusion of the testimony, the WCJ denied the exception. The court provided oral reasons indicating that Williams’s work was not localized in Louisiana; thus, the sole issue to be determined was the state where the contract for hire was confected. The WCJ found the intent of the parties to be the most significant factor in such a determination and emphasized that, without Brown’s testimony regarding the details of the initial phone call, Williams’s testimony that he was hired during that conversation was uncontradieted. -She further opined that the, paperwork required was a “formality” and. concluded that Williams “had a reasonable [¿expectation of a job upon arrival” in Hamburg, Arkansas. This finding was based on Brown’s alleged statements that a truck was open and that Williams should “come on báck,” along with Williams’s actions in having his family members “drop him off’ at the MTI office in Arkansas. Finding that the contract for hire was confected in Louisiana, the WCJ denied the exception.
MTI timely sought a supervisory writ, which this court granted.
, Discussion
The Workers’ Compensation Act (“Act”) sets forth the following test for the extension of Louisiana benefits to an injured employee while working outside Louisiana:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter liad such injury occurred within this state, such employee, or in the event of his death resulting from such injiiry, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time, of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state,
La. R.S. 23:1035.1(1) (hereafter “Section 1035.1”).
The WCJ’s initial ruling found that Williams’s employment was not “localized” in Louisiana. Instead, the WCJ ruled that from the testimony of Morris, Williams’s employment was principally localized in Arkansas. Those Arkansas activities identified by Morris included the employment contract documentation and company administration, and the directing of trucking operations extending across various states.
|/Turning to the second alternative under Section 1035.1, the legislature affords the Louisiana employee workers’ compensation benefits when the court can determine that “he is working under a contract of hire made in this state.” With the employer’s business unquestionably located in another state and the employee domiciled in Louisiana, this unspecific broad statement of contract formation gives no specific choice-of-law guidance for determining where a contract of hire is “made.” *139 Nevertheless, before and after the addition of Section 1035.1 to our law in 1975, the jurisprudence has given measures for determination of this issue.
Prior to the enactment of Section 1035.1, the Louisiana Supreme Court considered a Mississippi work-related accident which injured a Louisiana resident. Mattel v. Pittman Const. Co., 248 La. 540, 180 So.2d 696 (1965). The claimant, an ironworker, reported to the union hall in New Orleans where he was directed by a union officer to the defendant/employer’s jobsite in Gulf-port. The terms of employment with respect to wages and time were understood by the claimant in New Orleans. The court found that by agreement, the union had become the agent of the employer and was authorized to make the job offer in New Orleans. The defendant’s claim that the employer could have rejected the claimant at the jobsite did not convince the court that the contract was not a Louisiana contract. The court specifically noted that the employee did not go to the employer’s office'(presumably in Mississippi), fill out a written application, or direct any oral requests for employment to' the employer. The court therefore ^determined that “the contract of hiring was made in” Louisiana, not Mississippi.
This expression for the “making” of the contract thereafter became' codified as the test of Section 1035.1 in 1975. Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822 (La.1982), Recently, this court in Hughes v. T.G. Mercer Consulting Services, 44,908 (La.App.2d Cir.12/9/09), 26 So.3d 954, writ denied, 10-0361 (La.4/23/10), 34 So.3d 267, surveyed the jurisprudence concerning these cases involving the out-of-state employer and the injured Louisiana resident. The Hughes review--shows that the making-of-the-contract test requires examination of the intent of the parties and how and where the agreement was initiated through offer and acceptance.[1] The employer’s requirements for contract documentation or drug testing, as in the present case, are factors for consideration. The place of issuance of work implements or equipment is also a factor. The facts concérning the employee’s travel from Louisiana to the employer’s place of business for 'the initiation of the work activities are 'considered as well.
Another consideration which is present in this dispute concerns the interplay between the two tests of Section 1035.1. The WCJ easily determined that the “localization” test did not show that the job principally involved Louisiana performance. As an Arkansas corporation, MTI did not have any offices in Louisiana. Its trucking activities were not concentrated in Louisiana. Williams was not hired to drive the MTI trucks for deliveries |7primarily in Louisiana. Thus, the parties’ understanding of the place of the job performance activities is also a measure of the parties’ intent for where the contract was “made.”[2]
In this matter, the important first factor in the formation of the contract was the initiation of the request and offer, for employment by Williams to MTI in 2007. This Arkansas employer did not solicit the employment of the Louisiana resident. *140 With this fact and from the evidence overall, we do not find that the record supports the WCJ’s finding that Brown had apparent authority to hire Williams in the initial phone conversation. - The testimonies of Morris, as president of the company, and Grace demonstrate that the -hiring of Williams required more actions on his part in Hamburg and that company policy gave Brown no such authority to hire over the phone. Williams did not rebut Grace’s testimony that Williams had also called her in 2007 and had been advised of the necessity of the application, paperwork for the job. The possibility for drug testing and the review of Williams’s driving record were important conditions of employment. As an experienced driver, Williams understood these federally mandated requirements had to be fulfilled.
Additionally, there was no showing by Williams that he was paid by MTI to travel to Hamburg to submit the employment paperwork. He performed no job-related activity in Louisiana before the paperwork was | ^performed. The truck was then provided to him in Arkansas to begin his employment.
Importantly, from MTI’s perspective, it did not maintain offices in Louisiana and payment for Williams’s service was administered from the Arkansas office. MTI had no intent or objective to hire Williams to perform his duties primarily on trucking runs in Louisiana. MTI’s employment contract for wage payment and issues other than workers’ compensation could be expected to be governed under Arkansas law where the documentation for the contract was executed.
Accordingly, under the factual contact test of the jurisprudence, we find that Arkansas law governs this employment contract.
Finally, since the enactment of Section 1035.1 in 1975, Louisiana has now placed into the Civil Code the modern choice-of-law principles and the process for analysis of cases having contacts with other states. La. C.C. arts. 14, 3515 and 3537.[3] Section 1035.1’s lack of specific guidance for the choice-of-law for the making of this employment contract between the parties in different states requires the consideration of that issue under the.provisions of Arti- *141 eles 3515 and 3537. See, La. C.C. art. 14, Revision Comment (b) and La. C.C, art. 3537, Revision Comment (a).
Significantly, the process for the Ischoice-of-law for contracts under the second paragraph of Article 3537 requires the same analysis employed above for the factors summarized in Hughes:
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties.
Id.; La. C.C. art. 3537(1). Nevertheless, as noted in Revision Comment (e) to Article 3537, this list of factual contacts surrounding the contract “is neither exhaustive nor hierarchical and is intended to discourage rather than encourage a mechanistic counting of contacts as a means of selecting the applicable law” to govern this employment contract.
The primary additional considerations in the Code’s new process for choice-of-law concerns the examination of the following as set forth in Article 3537:
(2) the nature, type, and purpose of the contract; and
(3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
La. C.C. arts. 3537(2) and (3).
hnln this case, a contract involving a Louisiana resident’s employment raises our state’s policy interests. Louisiana has a strong policy reflected in the Act for the protection of injured workers and their compensation. Nevertheless, the record shows that the same policy of protection exists under Arkansas law, where Williams was provided with workers’ compensation benefits by MTI. Regarding the policies for the orderly planning of transactions and the promoting of multistate commercial intercourse, Morris did not operate its primary business activities in Louisiana. The seeking of employment with the Arkansas employer by a Louisiana employee, which occurred here,- should be promoted and not hampered by the imposition of Louisiana law upon an Arkansas employer with' little contacts generally and in this transaction with Louisiana.
Moreover, under the general provisions of our conflicts of law in Article 3515, the policy of minimizing the adverse consequences of subjecting a party to. the law of more than one state is recognized. La. C.C. art. 3515. With Williams’s forum-shopping in this ease, seeking both states’ workers’ compensation benefits, this policy concern has been violated. Thus, we do not find that Louisiana’s policy is impaired by the application of the law of Arkansas for this workers’ compensation issue, and we find that such result will promote mul-tistate commercial relationships for employment.

Conclusion

For the foregoing reasons, we reverse the WCJ’s denial of the Inemployer’s exception of lack of subject matter jurisdiction. Costs are assessed to Williams,
REVERSED.
DREW, J., concurs.
APPLICATION FOR REHEARING
Before CARAWAY, DREW, LOLLEY, GARRETT, and CALLOWAY, JJ.
Rehearing denied.

. Before the development of the modern choice-of-law concepts, the choice-of-law rule of lex loci contractus sought determination of the place where the contract is completed, and the law of that place might govern.. Ark-La-Tex Timber Co. v. Georgia Casualty & Surety Co., 516 So.2d 1217, 1220 (La.App. 2d Cir.1987).

. The choice-of-law rule of lex loci solutionis seeks determination of the place of fulfillment or performance of the obligations of the contract, and the law of that.place might govern. Ark-La-Tex Timber, supra, Note 1.

. La. C.C. art. 14: Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.
La. C,C. art. 3515: Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of Upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
La. C.C. art. 3537: Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength- and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.