GARRETT, J.
_JjA workers’ compensation judge (WCJ) denied the employer’s declinatory exceptions of lack of subject matter jurisdiction and in personam jurisdiction, finding that extraterritorial jurisdiction in Louisiana *707 was permissible because the claimant, while injured in Texas, was hired in Louisiana. This court granted the employer’s writ application to docket. We now grant the writ, make it peremptory, and reverse the WCJ’s denial of the exception of lack of subject matter jurisdiction;
FACTS
The claimant, Harold Jackson, is a Louisiana resident. He briefly worked as a truck driver for Royal T Energy, LLC (“Royal”), a Texas oil field service company with facilities in Houston, Odessa, and Pecos, Texas. ' The majority of Royal’s work is removal of wastewater from oil and gas fields.. Most of this work takes place in west Texas; no work is performed in Louisiana. Jackson began his employment with Royal in late March 2014. On June 3, 2014, he was injured in an accident in Pecos, Texas. As acknowledged .in Jackson’s brief to this court and during oral argument, he received workers’, compensation benefits in Texas, but they were allegedly terminated and he was denied treatment for his neck injury.
On March 17, 2015, Jackson filed a disputed claim for compensation with the Louisiana Office of Workers’. Compensation (OWC). He asserted that he sustained neck, shoulder, and arm injuries on June 3, 2014, while “struggling to hook up the hose on his tanker truck” at a water disposal facility in Pecos, Texas. He contended that his employer refused to provide treatment for his neck injury. He alleged that he was hired in Louisiana. [¡.The date of hire on the claim form was listed as March 25, 2014. In addition to treatment for his neck and benefits, he sought penalties and attorney fees; Royal was served by certified mail in Houston. Royal responded with declinatory exceptions of lack of subject matter and in per-sonam jurisdiction. It asserted that the Louisiana. OWC lacked jurisdiction over Jackson’s claim for workers’ compensation. It maintained that La. R.S. 23:1035.1, which allows for extraterritorial coverage under certain circumstances, is inapplicable in this case. Attached -to the exceptions was an affidavit from Veronica D. Maldonado, Royal’s controller, which outlined relevant actions related to Jackson’s employment with Royal, all of which occurred in Texas.
Jackson opposed the exceptions, urging that he had been hired over the telephone while in Louisiana. Alleging that the contract of hire was made in Louisiana, he maintained that Louisiana could exercise jurisdiction under La. R.S. 23:1035.1 and require the payment of Louisiana workers’ compensation benefits. He claimed that any training or orientation in Texas was irrelevant.
An evidentiary hearing on the exceptions was held on September 14, 2015. Gabriel Valeriano, Royal’s president, testified that none of Royal’s work is performed in Louisiana. He said that Royal hired DOT drivers, i.e., drivers regulated by the Department of Transportation. According to Valeriano, Kevin Knight, Royal’s former .director ■ of operations, helped Royal recruit drivers, but he did not have authority to hire drivers over the phone before they completed mandatory testing in Texas. Valeriano [(¡described the steps a job applicant was required to go through when seeking employment with his company — drug screens, paperwork, driving tests. He explained that the drug testing ivas done before the applicant came to Royal’s facility in Texas because failure of that test would automatically preclude any employment to drive Royal’s trucks. The federally mandated pre-employment road test was administered in Texas. The paperwork required by both the company and federal law was executed. in Texas.
*708 Royal also called Jackson to testify. He identified various documents he signed in Texas in connection with his employment with Royal, which were introduced into evidence by Royal. ■ He testified that Knight told him over the phone that he was hired before he left .Louisiana.[1] However, he also admitted that no one at Royal led him to. believe that Knight had the authority to hire him over the phone and that he had no understanding of Knight’s job title.[2] Jackson stated that he had been a truck driver for about 13 years, that he had worked for eight to 10 companies, and that he had been required to take a driver’s test for some of them. He further admitted |4that the only things that occurred in Louisiana were his actions in faxing what appears to be a generic online employment application form to Royal and taking the drug test. Royal did not pay his travel or moving expenses. ' During examination by his counsel, Jackson stated that Knight was the only-representative of Royal with whom he dealt and that Knight never said he was not authorized to hire him.[3]
Under questioning by the'WCJ, Jackson said he saw an ad for Royal in a trucking book and called a phone number. He spoke to Knight, who told him to fill out an application and fax it to the Houston office. Knight then called him back a few days later, saying that they were willing to hire him if his drug test and motor vehicle report were satisfactory. Three days after the drug test, Knight called to tell him he passed the drug test and that when housing issues were resolved, “he was going to hire me and we were going to Texas to move in as soon as the. houses were ready.” (Emphasis added.)[4] After that, Knight called him again and told him they were ready for him to come to Texas. Jackson insisted that he.would not have gone to Texas if he had not been hired already.
At the conclusion' of the evidence, the WCJ denied the exception of lack of subject matter jurisdiction in open court. She noted that Knight was Royal’s director of operations, thát he told Jackson over the phone he was hired, and that Jackson testified he would not have traveled to Texas with |fihis belongings if he had not been certain he was hired. Judgment denying both exceptions was signed on October 6, 2015.
Royal filed a writ application in this court. On January 21, 2016, the writ was granted and ordered to docket.[5]
*709 LAW
In determining whether a contract of hire is’ a Louisiana contract in a workers’ compensation case, the parties’ intent should be paramount. Dodd v. Merit Elec., Inc., 44,035 (La.App.2d Cir.4/15/09), 8 So.3d 849; Hughes v. T.G. Mercer Consulting Servs., 44,908 (La.App.2d Cir.12/9/09), 26 So.3d 954, writ denied, 2010-0361 (La.4/23/10), 34 So.3d 267. Some factors to consider in determining the intent of the parties include domicile of the parties, the nature of the work to be done, and the place where the employment was initiated. Dodd, supra; Hughes, supra.
The determination as to whether a claimant was working under a contract of hire made in Louisiana is a factual one. Dodd, supra; Hughes,, supra. Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard ■ of appellate review. Dodd, supra; Hughes, supra. In applying the manifest'error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Dodd, supra; Hughes, supra.
Un relevant part, La. R.S. 23:1035.1, which governs extraterritorial coverage, states:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, ■ or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled .to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
This court has recently considered this statute in Hughes v. T.G. Mercer Consulting Servs., supra, and Williams v. Morris Transp., 50,054 (La.App.2d Cir.11/18/15), 184 So.3d 136, writ denied, 2016-0247 (La.4/4/16), 190 So.3d 1207. Both of these cases involved truck drivers, and both were decided below by the same WCJ who decided the instant case. In both cases, the ruling below was that Louisiana had extraterritorial jurisdiction, and these rulings were reversed by this court.[6] Both cases are instructive in the appropriate resolution of the matter before us.[7]
The Hughes case involved a Louisiana Teamster truck driver who received a phone message from a Teamster union steward about hauling pipe between two towns in Texas for Mercer. In the message, the steward, who was employed by Mercer, said that “[tjhey’ll be ready to put you to 17work Monday when you get there.” Hughes packed up her trailer, traveled to Texas, and hauled pipe for Mercer for a week before being injured in an auto accident. After her workers’ compensation benefits in Texas were terminated, she sought benefits in Louisiana. The employer objected to the application of extraterritorial coverage on the basis that Hughes had receivéd benefits in Texas, *710 worked under a contract of hire made in Texas, been injured in Texas, and her employment was principally located in Texas.
At trial, Hughes testified that, while she was “very assured” she had the job before leaving Louisiana and would not have traveled to Texas otherwise, she was aware that she had to pass a drug test and fill out paperwork in Texas before she began the job. Also, she admitted that the phone call was her first contact with the steward. A Mercer executive testified that, although union stewards called drivers to show up at a location for a job, not all drivers who showed up were hired. The drivers were not actually hired until after they filled out paperwork, passed drug tests, and demonstrated their driving abilities. Because Mercer was in a specialized area of the trucking industry, drivers were aware that federal law mandated the drug test, paperwork, and driving test required by the company. Additionally, the executive stated that the steward had no authority to hire anyone on Mercer’s behalf. Hughes admitted that the steward never told her he had authority to hire. She also conceded that Mercer did not send her paperwork in Louisiana or pay her travel expenses to go to Texas.
|sThe WCJ ruled that the contract of hire occurred in Louisiana, finding that the steward had apparent authority to hire and did not extend conditions of hire (passing drug test or completing paperwork) and that the claimant was justified in believing she was hired.
After a thorough and scholarly review of the relevant jurisprudence, this court reversed the WCJ’s ruling, concluding that the contract of hire was not confected in Louisiana. In making this determination, we first looked to the intent of the parties, considering such factors as the domiciles of the parties and the nature of the work to be done. We also found that the WCJ was manifestly erroneous in reasoning that the steward had apparent authority to hire for Mercer. Among the many factors established in the jurisprudence, we considered these: no paperwork was sent to thé claimant in Louisiana; no work was performed prior to filling out paperwork; no payment of travel or living expenses was made by the employer; and no agreement was reached as to wages and working hours. Because drug and driving tests were mandated by federal law for this particular field of employment, we found that we could not discount them as “mere formalities.”[8]
In the Williams case, the claimant was a Louisiana resident who was employed as a truck driver for Morris Transportation, Inc. (“MTI”), which is located in Arkansas. He was injured in Mississippi while driving MTI’s 19truck. After first receiving workers’ compensation benefits in Arkansas, he sought benefits under Louisiana’s workers’ compensation law. MTI filed an exception asserting lack of subject matter jurisdiction.
At the hearing on the exception, Williams testified that after working for MTI for several years, he went to work for another company for a year. He then called MTI to see if he “could come back.” He asserted that he thought he was hired back because during the phone call, Sammy Brown, the safety director, “said I could come on back, they got a truck on the yard.” The next day, he went to MTI’s office in Arkansas, signed paperwork, got his truck, loaded it up, and went *711 to work that same day. He testified that he thought that the safety director had authority to hire him.
Tracy Graves, a safety clerk for MTI, testified that she received a call from Williams seeking employment. She said there was no offer of employment'during her conversation with him. While she did not recall the specifics of their conversation, she stated that she would have told him to come in, fill out an application, and “work up the process.” She identified the driver qualification form Williams signed; it gave MTI authority to check his past employment, driving, and drug history. According to Graves, a driver could not be completely hired before he signed this document. Timothy Morris, MTI’s president, testified that his company’s only office was in Arkansas. He also stated that completion of the driver qualification form is company policy for employment that meets federally required regulations.
| mThe WCJ denied the exception. She concluded that the parties’ intent was the most significant factor in making that determination. She emphasized that, -without testimony from Brown, Williams’ testimony that he was hired during their phone call was uncontradicted. She further opined that the paperwork required was a “formality.”
MTI sought a supervisory writ, which this court granted. We reversed the WCJ’s ruling, finding that, under the factual contact test of the jurisprudence, Arkansas law governed the employment contract. In reaching that conclusion, we considered numerous factors. Among them were the actions of the Louisiana resident in soliciting employment with the Arkansas employer. We also found the record did not support the WCJ’s finding that Brown had apparent authority to hire Williams. Thé testimony of MTI’s employees established that Williams’ hiring required more actions on his part when he arrived in Arkansas and that company policy did not give Brown authority to hire over the phone. As an experienced truck driver, Williams was aware of the federally mandated requirements of drug testing and review of his driving records as conditions of employment. There was no showing that MTI paid Williams to travel to Arkansas to submit his employment paperwork. Additionally, MTI maintained no offices in Louisiana, and payment for Williams’ services was administered from its Arkansas office.
This court also conducted a choice-of-law analysis under La. C.C. arts. 14, 3515, and 3537. This analysis calls for an issue in a case having contacts with other states to be governed by the law of the state whose Inpolicies would be most seriously impaired if its law were not applied. See La. C.C. art. 3515. In part, it requires the same analysis as the factors used in Hughes, i.e., contacts of each state -to the parties and the transaction, “including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties.” La. C.C. art. 3537(1). However, according to La. C.C. art. 3537(2) and (3), it additionally requires examination of the nature, type, and purpose of the contract; the policies referred to in La. C.C. art. 3515; and, the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Applying these principles, we found no impairment of Louisiana’s policy as a result of application of Arkansas law and held that such result would promote multi-state commercial relationships for employment. Among other things, we acknowledged that Arkansas, where Williams had *712 already received workers’ compensation benefits, had the same policy of protecting injured employees. We also noted his forum-shopping, which violated the policy expressed in La. C.C. art. 3515 of “minimizing the adverse consequences that might follow from subjecting a party to the law. bf more than one state.”
DISCUSSION
The factors primarily considered by the WCJ were Knight’s alleged apparent authority to hire and Jackson’s intent as demonstrated by his assertion that he would not. have traveled to Texas with his belongings had | ^he not been certain he was hired. However, there, are numerous other factors which are relevant to the instant case and which were not properly considered by the WCJ, and they weigh heavily against imposition of Louisiana’s extraterritorial jurisdiction.
Applying the factual contact .test of the jurisprudence, we find that Royal has no office or facility in Louisiana, and it does not conduct any of its wastewater removal business in this state. The job sought by Jackson involved driving in west Texas, near Midland, Odessa and Pecos. Royal did not pay Jackson travel or moving expenses to come to Texas for the driving test and paperwork. Federal regulations governing employment of truck drivers and company policies required a job applicant to fill out and sign paperwork, pass a drug test and a driving test, and have a satisfactory motor vehicle report before being hired. Although the drug test was performed in Louisiana, the other paperwork required by Royal was signed and the driving test was performed at Royal’s facilities in Texas.[9] As in Hughes, supra, we cannot dismiss these federal regulations concerning truck drivers as “mere formalities.” Valeriano testified that even he, as company president, lacked authority to hire a driver over the phone before completion |1sof testing because federal regulations required the testing prior to hiring. As an experienced truck driver, Jackson was aware óf DOT regulations, including the necessity of passing the driving test, and he admitted that he understood that, before being, “deemed acceptable as an employee of Royal,” he had to complete that test.[10] • In view of all of this evidence, we conclude that the WCJ was *713 manifestly erroneous in reasoning that Knight had apparent authority to hire Jackson over the phone before he ever completed the mandated testing and paperwork.
Applying a choice-of-law analysis, as set forth in Williams, supra, we also conclude that Louisiana’s policy is not impaired by application of. the law of Texas in this workers’ compensation case. Both states have policies of protecting employees through workers’ compensation laws, and, by his own admission, Jackson has already availed himself of benefits under Texas law. Like the claimant in the Williams case, he is now forum-shopping, a violation of the policy expressed in La. C.C. art. 3515. As to the policies for the orderly planning of transactions and the promoting of multistate commercial intercourse, Royal does not have offices in Louisiana. A | uLouisiana resident’s efforts to obtain employment with a Texas company should be promoted and not hampered' by the imposition of Louisiana law on the Texas company which has little or no contact with Louisiana.
CONCLUSION
Based on the foregoing, the writ application is granted and made peremptory. The ruling denying the exception of lack of subject matter jurisdiction filed by Royal T Energy, LLC, is reversed.[11] Costs are assessed to Harold Jackson.
WRIT' GRANTED AND MADE PEREMPTORY; REVERSED.

., Yet, he also said, "And when I got to Texas, Mr. ICnight told us to bring all of our belongings, our possessions and that we needed to be there because we had been accepted for the job.” (Emphasis added.)

. 'Additionally, the following exchange occurred between him and Royal’s counsel:
Q. Okay, And did anybody — so therefore it’s safe to say that nobody else, at .Royal lead you to believe in any fashion that Mr. Knight had the authority to hire you over the phone as a DOT truck driver. Is that correct?
A. • No more than I guess the lady that I faxed tire application to at the office. I had to fax my application to Royal T,
Q. Yeah, I understand that. But my question was no one at Royal did anything to make you believe that Mr. Knight had the authority to hire you over the phone, did they?
A. No, not that I know of.

. At the time of the hearing, Knight was no longer an employee of Royal and was not called as a witness by either side.

. However, Jackson had earlier testified that Knight told him he passed the drug test and that he was hired in the same phone call.

. In the meantime, Royal filed an answer in which it asserted various affirmative defenses, including La. R.S. 23:1208 and 23:1208,1. However, in February 2016, the WCJ stayed the proceedings below, pending the outcome of this writ. ■ ■

. Admittedly, the WCJ did not have the benefit of the Williams case when she ruled from the bench in September 2015, as it was pending before this court.

. Royal relied heavily upon these cases in its brief, whereas Jackson’s brief attempted to distinguish Hughes and made no mention of Williams. In fact, Jackson’s counsel asserted at oral argument that he was unfamiliar with the Williams case.

. A concurring judge applied a choice-of-law analysis and concluded that, under the balancing test of La. C.C. art. 3537, the State of Texas provided for workers' compensation, and its policies would “best be carried out in this case for this employment relationship significantly centered in that state.” That judge later authored Williams, supra.

. We have carefully reviewed the documentary evidence introduced by Royal. We find these documents are replete with references to the provisions of the Code of Federal Regulations, particularly the Federal Motor Carrier Safety Regulations ("FMCSR”). The documents include a certificate of training for entry leVel commercial drivers in accordance with the appropriate federal regulations, including the FMCSR;. a certificate of awareness of the FMCSR; a Royal pre-employ- ' mént/contract drug" and alcohol statement pertaining to DOT agency drug -and alcohol testing rules; a Royal uninsurable driver policy; a Royal driver statement of on-duty hours; a Royal driver "certification for other ■ compensated work; an online driver application for employment which was dated February 5, 2014; a Royal employee sign-off document acknowledging receipt and reading of Royal's handbook; and an employee acknowledgment of the Texas workers’ compensation network. With the exception of the job application, all of these documents were signed by Jackson in Texas.

. Several times in his testimony, Jackson demonstrated that he clearly understood the necessity and significance of the mandatory driving test.
Q. Okay. Well, what was your understanding of what would have happened with Royal had you failed the driver's test?
A. I probably wouldn't have been employed.
[[Image here]]
"Q. And you also understood that before you would be deemed acceptable as an employee of Royal, you had to complete a driver’s test before they would allow you to drive one of their trucks, isn’t that correct?
A. Yes, I’m more than certain.
Q. And that driver’s test took place in Texas?
*713 A. Yes.
This testimony clearly conflicts with his other testimony that he believed that he was hired over the phone.

. We note that the WCJ ruled in court only on the exception of lack of subject matter jurisdiction and did not address the issue of lack of in personam jurisdiction, although the judgment she signed denied both exceptions. No one has briefed this issué. It is not before us and appears, in any event, to be moot at this time.