# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1068


**FRANK J. VERRET**

**VERSUS**

**TYSON FOODS, INC.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 15-01869
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Candyce G. Perret, Judges.


**REVERSED AND RENDERED.**

**Jeffrey C. Napolitano**
**Juge, Napolitano, Guilbeau, Ruli, and Frieman**
**3320 W. Esplanade Ave. North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR EMPLOYER-APPELLANT:**
     Tyson Foods, Inc.

**Harry K. Burdette**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR CLAIMANT-APPELLEE:**
     Frank J. Verret

**PICKETT, Judge.**

Tyson Foods, Inc. appeals the judgment of the Office of Workers' Compensation (OWC) finding that the court had subject matter jurisdiction to adjudicate Frank Verret's claim against Tyson and the award of workers' compensation benefits to Mr. Verret.

## FACTS

Mr. Verret, a resident of Lafayette, Louisiana, was employed as a long-haul truck driver for Tyson on January 25, 2015. On that date, Mr. Verret lost control of his truck and crashed into the barrier in the median of a highway in Durant County, Oklahoma. Mr. Verret suffered lacerations to his hand and complained of back pain to the emergency medical personnel who responded to the scene of the accident. He was transported to the Medical Center of Southeast Oklahoma emergency room, where he repeated his complaints of back pain. The hospital records show Mr. Verret's back was x-rayed. According to hospital records, Mr. Verret was given prescriptions for Flexeril and Prednisone, though Mr. Verret denied getting these prescriptions at trial. The emergency room records also suggest that Mr. Verret follow up with his doctor within two or three days. Mr. Verret was then transported to McKinney, Texas for mandatory drug screening before he returned to the Tyson facility in Springdale, Arkansas, where he had begun his route on January 24, 2015.

When he returned to Springdale, Ms. Bonnie Cameron, a nurse employed by Tyson, scheduled a follow-up appointment for Mr. Verret with Dr. Karl Haws. She also gave him a voucher to have his prescriptions from the emergency room doctor filled at a local pharmacy, though Mr. Verret denies this happened. Mr. Verret saw Dr. Haws on January 27, 2015. Dr. Haws's records indicate that Mr. Verret stated that his back pain had resolved. Mr. Verret denies that he told Dr.

Haws that his back pain was resolved. Dr. Haws noted that Mr. Verret could return to full-duty work.

Tyson's employment records indicate Mr. Verret retired from Tyson on January 28, 2015. He has never returned to work.

Mr. Verret filed a Disputed Claim for Compensation on March 26, 2015, alleging injuries to his back and shoulders. Tyson denied that he was entitled to workers' compensation benefits. Tyson also filed a motion for summary judgment (more appropriately a declinatory exception) alleging that the OWC lacked subject matter jurisdiction to adjudicate this case. The workers' compensation judge (WCJ) referred the exception to the trial. Following a trial, the WCJ found that the contract of hire between Mr. Verret and Tyson was formed in Louisiana, and therefore the OWC had subject matter jurisdiction. The WCJ further found that Mr. Verret's back injury was related to the work accident and awarded benefits retroactive to the date of the accident. The WCJ found that Mr. Verret's shoulder injury was not related to the accident. The WCJ did not award penalties and attorney fees to Mr. Verret. Tyson Food now appeals the judgment of the WCJ.

## ASSIGNMENTS OF ERROR

Tyson alleges three assignments of error:

1. The trial court erred in denying the employer's Exception of Lack of Subject Matter Jurisdiction.

2. The trial court erred in finding that the claimant's accident caused any type of disabling injury to his lower back.

3. The trial court erred in awarding disability benefits from the date of the accident.

2

# DISCUSSION

It is undisputed that this accident occurred in Oklahoma. Louisiana Revised Statutes 23:1035.1(1) states:

> If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
>
> (a) his employment is principally localized in this state, or
>
> (b) he is working under a contract of hire made in this state.

There is no dispute that Mr. Verret's employment was not principally located in Louisiana. While he parked his truck in Lafayette when he was not working, the evidence shows that his routes always began at a Tyson facility outside of Louisiana. Further, Mr. Verret, by his own admission, made limited deliveries to customers in Louisiana.

The issue in this case for the purpose of subject matter jurisdiction is whether the employment contract between Mr. Verret and Tyson was confected in Louisiana. This court has determined that whether an employee is working under a contract of hire made in Louisiana is a determination of fact which we will not disturb on appeal unless it is manifestly erroneous or clearly wrong. *Hanks v. Kinetics Grp., Inc.,* 03-1354 (La.App. 3 Cir. 6/2/04), 878 So.2d 782, *writs denied,* 04-1517, 04-1693 (La. 10/1/04), 883 So.2d 990, 994. In a workers' compensation case, the intent of the parties is paramount in deciding whether a contract should be regarded as a Louisiana contract or that of another state. *Offord v. Border to Border Trucking,* 00-1201 (La.App. 3 Cir. 2/7/01), 779 So.2d 1090; *Hurtado v. CJC Serv., Inc.,* 05-736 (La.App. 5 Cir. 3/14/06), 926 So.2d 624.

3

Mr. Verret learned that Tyson was hiring long-haul drivers from a friend of his wife. Sometime in 1999, he traveled to a Tyson facility in Center, Texas, to apply for a position. At some later time, Mr. Verret called Tyson from his home in Lafayette, Louisiana, to inquire about the status of his application. Mr. Verret claims that during this call, he was hired to drive for Tyson. He then drove to Center to pick up his truck and begin his employment. He claims he would not have returned to Center to get his work assignment unless he had been hired.

Tyson introduced the affidavit and deposition of Scott Wilkinson, the terminal manager for the Tyson facility in Center before Mr. Verret was hired. As terminal manager, Mr. Wilkinson oversaw hiring. Mr. Wilkinson explained that, as an initial step, an applicant would have to appear in person at the facility in Center to fill out an application for employment and sign a release for their driving records. Mr. Wilkinson would review the application, the driving record of the applicant, and contact references. If the applicant was still a prospect for employment, the applicant had to return to Center for a drug test, a physical examination, and a road test, all mandated by the United States Department of Transportation. An applicant was not considered hired until he passed the drug test, the physical examination, and the road test. Tyson contends that when Mr. Verret called to inquire about the job from Lafayette, any offer of employment would have been conditional until the required tests were passed, and Mr. Verret would not actually be hired until he was in Center, Texas.

In *Granger v. F.F.E Transportation Service*, 98-127 (La.App. 3 Cir. 5/13/98), 713 So.2d 667, a recruiter for a trucking company contacted the claimant, who at the time was a student at a driving school in Lake Charles. The claimant completed an application for employment in Louisiana, an offer for employment was made in Louisiana, and the employer provided transportation from Louisiana

4

to Texas for training. After completing training, the claimant was injured in Indiana while in the course and scope of her employment. This court, citing a similar situation in *Lakvold v. Stevens*, 95-866 (La.App. 1 Cir. 12/15/95), 665 So.2d 828, held that the OWC had subject matter jurisdiction to adjudicate the claim because the contract for hire was made in Louisiana.

In *Offord*, 779 So.2d 1090, employees of a trucking company delivered an application to the claimant in Louisiana. One of these employees later picked up the application and returned it to the company's personnel manager in Texas. The personnel manager then contacted the claimant at his home in Opelousas and offered him a job. When the claimant accepted the job, he was transported by company employees to Texas to complete the formalities necessary for his employment. The claimant was injured in the course and scope of his duties in Tennessee. The WCJ held that the contract for hire was made in Louisiana. This court affirmed, holding that the WCJ was not unreasonable in finding that the OWC had subject matter jurisdiction.

In *Baldwin v. North American Energy Services*, 07-667 (La.App. 3 Cir. 10/31/07), 970 So.2d 101, *writ denied*, 07-2310 (La. 2/1/08), 976 So.2d 717, the claimant suffered a head injury in an accident in the course and scope of his employment in Las Vegas. While the claimant could not remember the details of his hiring process, his friend, Clint Ainsworth, who was hired at the same time testified about how he was hired. He contacted a company representative in Texas about employment after hearing about a job in Las Vegas from another friend, Justin Wells. Mr. Ainsworth testified that he was hired over the phone. Mr. Giametta informed the men that they were hired as long as their drug screens were negative. The drug screens were performed in Louisiana. After passing the drug screens in Louisiana, Mr. Ainsworth and Mr. Wells flew to Las Vegas from

Alexandria to begin work. They were reimbursed by the company for their travel. The WCJ determined that because the men initiated contact with the company representative, the contract for hire was not made in Louisiana and found no subject matter jurisdiction. This court reversed, finding that because "all negotiation, paperwork, testing, and agreements were performed and finalized in Louisiana," the contract for hire was made in Louisiana. *Id.* at 103.

In *Hesser v. Nabors Drilling USA, LP*, 10-741 (La.App. 3 Cir. 12/8/10), 52 So.3d 1095, the claimant, while looking for employment, visited his friend at a company rig in Westdale, Louisiana. The friend introduced the claimant to the rig manager, to whom he recommended the claimant for employment. The rig manager advised the claimant to visit the company's human resource office in Kilgore, Texas, but did not offer the claimant a job. The claimant then travelled to Texas and completed a job application, a pre-employment physical, and drug and alcohol screening. He then signed a conditional offer form, pending the results of the drug screen, physical, a background check, and completion of all paperwork. When these results were received, and while still in Texas, the claimant was offered a job with the company. Three months later, while in the course and scope of his employment in Texas, claimant suffered a back injury. He filed a Disputed Claim for Compensation in Louisiana. Believing he had a job offer when he left the rig in Westdale, the claimant argued that the contract of hire was formed in Louisiana. The employer filed an exception of subject matter jurisdiction. The employer introduced the testimony of the claimant's friend and the Westdale rig manager, who denied they offered the claimant a job. The WCJ found the contract of hire was executed in Texas, and the OWC lacked jurisdiction. This court found the WCJ made a credibility determination and affirmed the dismissal of the case.

In *Martin v. Southwest Moving & Delivery*, 29,892 (La.App. 2 Cir. 10/29/97), 701 So.2d 1351, the second circuit considered a case where the claimant, a resident of Shreveport, was injured in California in the course and scope of his employment with a moving truck company. The claimant originally discussed the job with the owner of the company while in Florida. After returning home to Louisiana, the claimant called the employer in Houston to further discuss the job. The claimant, believing he had a job waiting for him in Houston, travelled to Houston. The employer stated that all discussions about employment details occurred in Houston. The WCJ determined that the OWC lacked subject matter jurisdiction. The second circuit affirmed, stating "the only Louisiana contact in the episode rests upon the fact that a Louisiana domiciliary initiated a phone call from this state to a Texas employer." *Id.* at 1354.

In *Williams v. Morris Transportation*, 50,054 (La.App. 2 Cir. 11/18/15), 184 So.3d 136, *writ denied*, 16-247 (La. 4/4/16), 190 So.3d 1207, the claimant, a resident of Louisiana, was injured in the course and scope of his employment as a truck driver in Mississippi while working for a company based in Arkansas. The claimant worked for this company, left in 2006, and returned to work for the company in 2007. The claimant filed a workers' compensation claim in Louisiana. The employer filed an exception of lack of subject matter jurisdiction. The WCJ found that the claimant "had a reasonable expectation of a job" in Arkansas based on a phone call that he originated in Louisiana with a representative of the company. The WCJ denied the exception. The employer took a writ.

Before reviewing the circumstances of the claimant's re-hire, the second circuit reviewed the jurisprudence and the factors considered in the case:

> Prior to the enactment of Section 1035.1, the Louisiana Supreme Court considered a Mississippi work-related accident which injured a Louisiana resident. *Mattel v. Pittman Const. Co.,* 248 La.

7

540, 180 So.2d 696 (1965). The claimant, an ironworker, reported to the union hall in New Orleans where he was directed by a union officer to the defendant/employer's jobsite in Gulfport. The terms of employment with respect to wages and time were understood by the claimant in New Orleans. The court found that by agreement, the union had become the agent of the employer and was authorized to make the job offer in New Orleans. The defendant's claim that the employer could have rejected the claimant at the jobsite did not convince the court that the contract was not a Louisiana contract. The court specifically noted that the employee did not go to the employer's office (presumably in Mississippi), fill out a written application, or direct any oral requests for employment to the employer. The court therefore determined that "the contract of hiring was made in" Louisiana, not Mississippi.

This expression for the "making" of the contract thereafter became codified as the test of Section 1035.1 in 1975. *Thompson v. Teledyne Movible Offshore, Inc.,* 419 So.2d 822 (La.1982). Recently, this court in *Hughes v. T.G. Mercer Consulting Services,* 44,908 (La.App.2d Cir.12/9/09), 26 So.3d 954, *writ denied,* 10–0361 (La.4/23/10), 34 So.3d 267, surveyed the jurisprudence concerning these cases involving the out-of-state employer and the injured Louisiana resident. The *Hughes* review shows that the making-of-the-contract test requires examination of the intent of the parties and how and where the agreement was initiated through offer and acceptance. The employer's requirements for contract documentation or drug testing, as in the present case, are factors for consideration. The place of issuance of work implements or equipment is also a factor. The facts concerning the employee's travel from Louisiana to the employer's place of business for the initiation of the work activities are considered as well.

Another consideration which is present in this dispute concerns the interplay between the two tests of Section 1035.1. The WCJ easily determined that the "localization" test did not show that the job principally involved Louisiana performance. As an Arkansas corporation, MTI did not have any offices in Louisiana. Its trucking activities were not concentrated in Louisiana. Williams was not hired to drive the MTI trucks for deliveries primarily in Louisiana. Thus, the parties' understanding of the place of the job performance activities is also a measure of the parties' intent for where the contract was "made."

*Id.* at 139 (footnotes omitted).

Applying these facts to the case, the second circuit found that the company representative the claimant spoke to over the phone lacked the authority to hire him. Further, as an experienced driver, the claimant knew of the federally-

mandated requirements, including drug testing, before he could formally be hired. The claimant was not paid to travel to Arkansas before he was hired. The claimant did not do any work in Louisiana before he was hired. The truck was provided to the claimant in Arkansas. The second circuit concluded that the contract was made in Arkansas, and the OWC lacked subject matter jurisdiction.

We find that the facts of Mr. Verret's case are very similar to the situation in *Williams*. Mr. Verret travelled to Texas to apply for a job with Tyson. While he may have expected that he was hired when he returned to Texas a second time based on his phone conversation while in Louisiana, Tyson introduced sufficient evidence to show that Mr. Verret would not actually be hired until he passed a road test and a physical examination. These are not mere formalities, but federally-mandated requirements. The job was not principally located in Louisiana. Mr. Verret had to go to Center, Texas, or Springdale, Arkansas, or some other Tyson facility to pick up a load and actually begin getting paid for his job. Tyson did not have any long-haul facilities in Louisiana, and Mr. Verret made infrequent deliveries to Louisiana.

We find the WCJ committed manifest error in finding the OWC had subject matter jurisdiction over this claim. The declinatory exception of lack of subject matter is sustained. Mr. Verret's claims against Tyson are dismissed.

## CONCLUSION

The judgement of the WCJ is reversed. Costs of this appeal are assessed to the appellee, Mr. Verret.

**REVERSED AND RENDERED.**

9